# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
WILLIAM STAMPS,
Defendant and Appellant.

S255843

First Appellate District, Division Four
A154091

Alameda County Superior Court
17CR010629

June 25, 2020

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

PEOPLE v. STAMPS

S255843

Opinion of the Court by Corrigan, J.

Defendant entered into a plea agreement for a specified term that included a prior serious felony enhancement (Pen. Code, § 667, subd. (a)). While his appeal was pending, a new law went into effect permitting the trial court to strike a serious felony enhancement in furtherance of justice (Pen. Code, § 1385, subd. (a)), which it was not previously authorized to do. We hold defendant was not required to obtain a certificate of probable cause (Pen. Code, § 1237.5) to claim on appeal that the new law applied to him retroactively, and that the new law applies because his case is not yet final on appeal. Although we agree with defendant that the matter must be remanded to the trial court, we reject his contention that the court is authorized to exercise its discretion to strike the enhancement but otherwise maintain the plea bargain. Defendant on remand may seek the court's exercise of discretion, but if the court chooses to strike the enhancement, its decision will have consequences to the plea agreement. (See discussion *post*, at pp. 21-27.)

I. BACKGROUND

Defendant William Stamps was charged with three counts of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)). The complaint also alleged two prior first degree burglary convictions as serious felonies under the "Three Strikes" law and

1

the serious felony enhancement provision.[1] Three state prison prior convictions were also alleged. (Pen. Code, § 667.5, subd. (b).) Had defendant been convicted of all counts and enhancements, he would have been subject to the 25-years-to-life provisions of the Three Strikes law (Pen. Code, § 1170.12, subd. (c)(2)) along with any applicable fixed-term enhancements.

In November 2017, pursuant to negotiation, defendant pled to one first degree burglary and admitted one serious felony conviction in exchange for a nine-year prison sentence, based on the low term for burglary (two years), doubled under the Three Strikes law (Pen. Code, § 1170.12, subd. (c)(1)), plus five years for the serious felony enhancement. All remaining counts and allegations were dismissed on motion of the district attorney as part of the plea agreement. Defendant was sentenced in January 2018, subsequently filed a notice of appeal, and sought a certificate of probable cause (Pen. Code, § 1237.5; Cal. Rules of Court, rule 8.304(b)), which the trial court denied.

On September 30, 2018, the governor approved Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393) allowing a trial court to dismiss a serious felony enhancement in furtherance of justice.[2] After the law was signed but before it became effective on January 1, 2019, defendant filed an opening brief in the Court of Appeal. He raised a single claim that, in light of Senate Bill 1393, his case should be remanded to the trial court to exercise its discretion whether to strike the serious felony enhancement. The Attorney General countered that

---

[1] (See Pen. Code, §§ 667, subd. (a)(1), (4), 1170.12, subds. (b)(1), (c)(2), 1192.7, subd. (c)(18).)

[2] (See Stats. 2018, ch. 1013, §§ 1 & 2.)

defendant's appeal was not cognizable because he failed to obtain a certificate of probable cause. The Court of Appeal concluded a certificate was not required and Senate Bill 1393 applied retroactively to defendant. It then remanded, permitting the trial court to exercise its discretion whether to strike the enhancement.[3] (*People v. Stamps*, *supra*, 34 Cal.App.5th at pp. 120-124; see discussion *post*.) We agree on the certificate question but modify the remand order.

## II. DISCUSSION

### A. *A Certificate of Probable Cause Was Not Required*

Generally, a defendant may appeal "from a final judgment of conviction." (Pen. Code, § 1237, subd. (a).) However, if the judgment resulted from a guilty or no contest plea, Penal Code[4] section 1237.5, subdivisions (a) and (b), provide that no appeal may be taken unless "[t]he defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings," and the court "has executed and filed a certificate of probable cause for

---

[3] The Court of Appeal concluded: "In exercising its discretion, the trial court is not precluded from considering whether doing so would be incompatible with the agreement on which defendant's plea was based. If the trial court strikes the enhancement, it shall resentence defendant. In selecting an appropriate sentence, the court retains its full sentencing discretion except that it may not impose a term in excess of the negotiated nine years without providing defendant the opportunity to withdraw his plea. [Citation.] If the trial court does not strike the enhancement, it shall reinstate the sentence." (*People v. Stamps* (2019) 34 Cal.App.5th 117, 124.)

[4] Subsequent statutory references are to the Penal Code unless noted.

such appeal with the clerk of the court." "[S]ection 1237.5 admits of this exception: The defendant may take an appeal without a statement of certificate grounds or a certificate of probable cause if he does so solely on noncertificate grounds, which go to postplea matters not challenging his plea's validity and/or matters involving a search or seizure whose lawfulness was contested pursuant to section 1538.5." (*People v. Mendez* (1999) 19 Cal.4th 1084, 1096; *People v. Panizzon* (1996) 13 Cal.4th 68, 74 (*Panizzon*); see Cal. Rules of Court, rule 8.304(b)(4).) A certificate of probable cause functions to discourage frivolous appeals following a guilty or no contest plea. It promotes judicial economy by screening out baseless postplea appeals before time and money are spent on record preparation, briefing and appellate review. (See *Panizzon*, at pp. 75-76.)

"It has long been established that issues going to the validity of a plea require" a certificate of probable cause. (*Panizzon*, *supra*, 13 Cal.4th at p. 76.) "Even when a defendant purports to challenge only the sentence imposed, a certificate . . . is required if the challenge goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement." (*People v. Johnson* (2009) 47 Cal.4th 668, 678 (*Johnson*).) "[T]he critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the [certificate] requirements of section 1237.5." (*Panizzon*, at p. 76.)

We have stated in a different context that "a challenge to a negotiated sentence imposed as part of a plea bargain is properly viewed as a challenge to the validity of the plea itself." (*Panizzon*, *supra*, 13 Cal.4th at p. 79.) This characterization was correct in its context, but it is not universally applicable.

Panizzon's claim that his sentence was cruel and unusual attacked the validity of his plea because "the sentence defendant received was part and parcel of the plea agreement he negotiated with the People." (*Id.* at p. 78.) In so concluding, we rejected the defendant's argument that "his claim of error, i.e., that the bargained sentence is unconstitutional when compared to the sentences of his codefendants, is based on events that occurred *after* the no contest plea was entered." (*Ibid.*) The circumstance that Panizzon's codefendants were later sentenced to lesser terms merely bolstered his essential claim that the sentence agreed to in the plea bargain was constitutionally defective at the time the agreement was made. As *Panizzon* reasoned, "the essence of defendant's claim is that his sentence is disproportionate to his level of culpability [citation], a factor that also was known at the time of the plea and waiver. Thus, the real thrust of defendant's claim concerns events predating entry of the plea and waiver." (*Id.* at p. 86.) Such an argument attacks the plea itself.

Similarly, we held that a claim the trial court violated the multiple punishment ban of section 654 constituted an attack on the plea where the court imposed the maximum term agreed upon by the parties: "[T]he specification of a maximum sentence or lid in a plea agreement normally implies a mutual understanding of the defendant and the prosecutor that the specified maximum term is one that the trial court may lawfully impose and also a mutual understanding that, absent the agreement for the lid, the trial court might lawfully impose an even longer term." (*People v. Shelton* (2006) 37 Cal.4th 759, 768; see also *People v. Cuevas* (2008) 44 Cal.4th 374, 379-384 (*Cuevas*).) Again, Shelton sought to attack the plea bargain as

defective *when it was made* because it permitted a sentence prohibited by statute.

These cases teach that when the parties reach an agreement in the context of existing law, a claim that seeks to avoid a term of the agreement, as made, is an attack on the plea itself. They do not, however, address the nature of a challenge based, not upon existing law, but on a subsequent change in the law. Defendant's appellate claim here relies on the principle that "the general rule in California is that plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy." (*Doe v. Harris* (2013) 57 Cal.4th 64, 71.) "That the parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them" (*id*. at p. 66), and "[i]t follows . . . that requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement" (*id*. at p. 73). (See *Harris v. Superior Court* (2016) 1 Cal.5th 984, 990-991; see discussion *post*.)

Defendant argues that a certificate of probable cause was not required because he is not challenging the validity of his plea. Rather, he is seeking retroactive application of a subsequently enacted ameliorative provision, which he contends has been incorporated into his plea agreement. We agree defendant was not required to obtain a certificate. His appellate claim does not constitute an attack on the validity of his plea because the claim does not challenge his plea as defective when made. We separately discuss the retroactivity and remedy questions *post*.

As discussed, a claim that seeks to avoid a term of a plea agreement can constitute an attack on the validity of the plea itself, necessitating a certificate of probable cause. "Exempt from this certificate requirement are postplea claims, including sentencing issues, that do not challenge the validity of the plea." (*Cuevas*, *supra*, 44 Cal.4th at p. 379.) Whether an appeal challenges the validity of the plea itself, requiring a certificate, or seeks merely to correct alleged postplea error can be a nuanced question. Defendants who lack a required certificate may structure their appellate arguments to try and obviate the need for one.

In *People v. Ribero* (1971) 4 Cal.3d 55 (*Ribero*), the defendant sought to withdraw his plea, arguing he was misled by counsel as to the sentence he would receive. He then appealed from the denial of that motion. In *Johnson*, *supra*, 47 Cal.4th 668, the defendant claimed on appeal his counsel was ineffective for not supporting his unsuccessful attempt to withdraw a plea. Neither Ribero nor Johnson had obtained a certificate of probable cause and asserted one was not necessary because they were not attacking the validity of their plea but seeking instead review of postplea error. Those arguments were rejected based on the facts of the cases. In each case, the essence of the defendants' argument was that his initial plea was invalid. As the *Ribero* court explained: "[T]he crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made. . . . If a defendant challenges the validity of his plea by way of a motion to withdraw the plea, he cannot avoid the [certificate] requirements . . . by labelling the denial of the motion as an error in a proceeding subsequent to the plea." (*Ribero*, at pp. 63-64.)

In *Ribero* and *Johnson*, a certificate was required because the defendants were arguing their pleas were defective when made. Their subsequent motions to withdraw those pleas rested on the argument that the plea itself was invalid. The timing of their motions did not change the fact that the motions, the denial of which they sought to appeal, challenged the underlying integrity of the pleas themselves. Under *Ribero* and *Johnson*, courts should look to the substance of a defendant's claim and not to whether it is labeled a postplea or sentencing issue. (See *Johnson*, *supra*, 47 Cal.4th at p. 681; *Ribero*, *supra*, 4 Cal.3d at p. 63.)

Several cases serve to clarify the rule by way of distinction. They provide examples in which the appeal does not attack the validity of the plea itself but is properly understood as an appeal from a postplea decision.

In *People v. French* (2008) 43 Cal.4th 36 (*French*), the defendant was charged with 12 counts of lewd act with a child under 14 (§ 288, subd. (a)). If convicted on all counts, he faced a maximum sentence of 180 years to life. He pled no contest to six counts as part of a plea agreement, and six counts were dismissed. The parties agreed that the maximum sentence would be 18 years. At sentencing, the court imposed that term, finding the aggravated term of eight years was called for in one of the counts and imposing an additional, consecutive, one-third of the midterm of two years for each of the remaining five counts. The trial court selected the upper term for one count because it found a circumstance in aggravation had been established. (*French*, at pp. 41-43.)

At the time of French's plea, the determination of whether aggravating factors supported a sentence above the midterm

was left to the discretion of the trial court. After entry of the plea, United States Supreme Court cases held that a defendant has a Sixth Amendment right to have a jury determine, beyond a reasonable doubt, facts supporting an "exceptional sentence." (*Blakely v. Washington* (2004) 542 U.S. 296, 303; see *United States v. Booker* (2005) 543 U.S. 220, 244; *Ring v. Arizona* (2002) 536 U.S. 584, 609; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 481-484; *French, supra*, 43 Cal.4th at p. 48.) In *Cunningham v. California* (2007) 549 U.S. 270, the high court concluded that, under California's determinate sentencing scheme (§ 1170), a defendant has a Sixth Amendment right to have a jury, not a judge, determine facts supporting an upper term sentence. (*Cunningham*, at pp. 288-294.) French appealed the court's imposition of the upper term based on its finding of aggravated circumstances. He did not, however, secure a section 1237.5 certificate. This court held that the certificate was not required. The unanimous opinion reviewed holdings in *Panizzon* and *Shelton* and contrasted them to the outcome in *People v. Buttram* (2003) 30 Cal.4th 773 (*Buttram*). (*French*, at pp. 44-46.)

Buttram was charged with felony possession of heroin and methamphetamine for sale (Health & Saf. Code, §§ 11351, 11378), along with two prior strikes and serious felony convictions. As charged, he faced a 25-year-to-life sentence. He pled guilty in return for a promise that his maximum sentence would not exceed six years. At sentencing, the defense argued against a prison term and urged instead that Buttram should be sent to a drug treatment program. The court weighed the sentencing options on the record, dismissed one strike and sentenced Buttram to two concurrent six-year terms. (*Buttram, supra*, 30 Cal.4th at pp. 777-779.) He appealed, without a

section 1237.5 certificate, arguing that the court abused its discretion in imposing a prison term rather than requiring drug treatment. The Court of Appeal dismissed the appeal, concluding it was an attack on the validity of the plea, but the *Buttram* majority reversed. It explained that the defendant was not attacking the validity of the plea as entered but only the court's postplea exercise of its sentencing discretion. It noted long-standing precedent that "where the terms of the plea agreement leave issues open for resolution by litigation, appellate claims arising within the scope of that litigation do not attack the validity of the plea, and thus do not require a certificate of probable cause." (*Buttram*, at p. 783, citing *People v. Ward* (1967) 66 Cal.2d 571, 574-576.)

We concluded in *French* that the defendant's challenge there was similar to Buttram's. It did not assert that the plea was invalid but, instead, that independent irregularities at his sentencing hearing required reversal of that sentence.[5] (*French, supra*, 43 Cal.4th at p. 45.)

Like Buttram and French, Stamps does not seek to put aside or withdraw his plea. He does not urge that his plea was invalid when made. Instead, he seeks relief because the law subsequently changed to his potential benefit. His appeal, then, does not attack the plea itself and does not require a certificate

---

[5] Nonsentencing cases, like *People v. Vera* (2004) 122 Cal.App.4th 970, also help clarify the distinction. *Vera* concluded a challenge to the court's denial of a postplea *Marsden* (*People v. Marsden* (1970) 2 Cal.3d 118) motion did not require a certificate: "We regard the issue of whether defendant currently needed a new attorney [at sentencing] as a postplea issue not essentially implicating the validity of the no contest plea." (*Vera*, at p. 978.)

of probable cause.  We turn now to the merits of his retroactivity claim and the proper remedy.

B.  *Senate Bill 1393 Applies Retroactively*

Defendant argues that Senate Bill 1393 applies retroactively to his plea bargain and requires a remand to the trial court to consider striking the serious felony enhancement.  "It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise."  (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287; see *People v. Sandoval* (2007) 41 Cal.4th 825, 845.)  The Penal Code provides that "[n]o part of it is retroactive, unless expressly so declared."  (§ 3.)

Defendant acknowledges that Senate Bill 1393 contained no provision regarding retroactive application but relies on our decision in *In re Estrada* (1965) 63 Cal.2d 740.  *Estrada* considered the retroactive application of a statutory amendment that lessened punishment, identifying the issue as "one of trying to ascertain the legislative intent—did the Legislature intend the old or new statute to apply?  Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional."  (*Id*. at p. 744.)  *Estrada* concluded that, if no contrary indication exists, "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it

constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id*. at p. 745.) "The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 881, quoting *People v. Conley* (2016) 63 Cal.4th 646, 657.)

We agree with defendant that, under *Estrada*, Senate Bill 1393 applies to his case retroactively because his judgment is not yet final. Eliminating the prior restriction on the court's ability to strike a serious felony enhancement in furtherance of justice constitutes an ameliorative change within the meaning of *Estrada*. (Cf. *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308-309.) The Attorney General does not argue otherwise.

## C. *The Proper Remedy*

### 1. *Defendant's Proposed Remedy*

Defendant contends the proper remedy is to remand to the trial court to consider striking the serious felony enhancement while otherwise maintaining the plea agreement intact. We disagree. The *Estrada* rule only answers the question of *whether* an amended statute should be applied retroactively. It does not answer the question of *how* that statute should be applied. Section 1385, subdivision (a) states in part that "[t]he judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance

of justice, order an action to be dismissed." Section 1385, subdivision (b)(1) provides that if a court "has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice . . . ." As noted, Senate Bill 1393 removed provisions that prohibited a trial court from striking a serious felony enhancement in furtherance of justice under section 1385.

If defendant stood convicted of a crime with an enhancing prior as a result of trial or an open plea of guilty as charged, his case could be remanded for the court to reconsider its sentence in light of its newly conferred authority to strike the enhancement. This case is procedurally different because both parties entered a plea agreement for a specific prison term.

Even when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike in contravention of a plea bargain for a specified term. Section 1192.5 allows a plea to "specify the punishment" and "the exercise by the court thereafter of other powers legally available to it," and "[w]here the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and *the court may not proceed as to the plea other than as specified in the plea*." (Italics added.)

*People v. Cunningham* (1996) 49 Cal.App.4th 1044 addressed an analogous issue. There, the defendant claimed on appeal that his case should be remanded to allow the court to consider striking his prior strike conviction. *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, which was decided after

Cunningham's plea, clarified that a court retained such discretion under section 1385. (*Romero*, at pp. 529-530.) *Cunningham* declined to permit a remand for a sentence in contravention to the plea bargain: "Here, defendant stipulated that he would be sentenced to the 32-month term imposed by the court. Defendant cites no authority, nor have we found any, allowing a trial court to breach the bargain by striking the prior to impose less than the 32 months agreed upon. 'While no bargain or agreement can divest the court of the sentencing discretion it inherently possesses [citation], a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citations.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." ' " (*Cunningham*, at p. 1047.)

Even applying section 1385 as amended, long-standing law limits the court's unilateral authority to strike an enhancement yet maintain other provisions of the plea bargain. "Some potential for confusion appears in broad statements to the effect that once a trial court has 'accepted' a plea bargain, it too is 'bound' by it. . . . Taken out of context, they might suggest that the court surrenders its sentencing discretion the moment it accepts a negotiated plea. Such a view is of course irreconcilable with the statute and cases . . . . The statements . . . are best understood as only prohibiting the court from unilaterally modifying the terms of the bargain without

affording . . . an opportunity to the aggrieved party to rescind the plea agreement and resume proceedings where they left off." (*People v. Kim* (2011) 193 Cal.App.4th 1355, 1361 (*Kim*).)

Thus, it is not enough for defendant to establish that the amended section 1385 applies to him retroactively under *Estrada* in order to receive the remedy he seeks. In order to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, defendant must establish not only that Senate Bill 1393 applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385. We are not persuaded that the Legislature intended this result.

The Legislative Counsel's Digest explained that Senate Bill 1393 "would delete the restriction prohibiting a judge from striking a prior serious felony conviction in connection with imposition of the 5-year enhancement described above and would make conforming changes." (Legis. Counsel's Dig., Sen. Bill No. 1393 (2017-2018 Reg. Sess.).) The author of the bill explained it was necessary because " '[n]early every sentence enhancement in California can be dismissed at the time of sentencing if the judge finds that doing so would serve the interest of justice. However, under existing law people with current and prior serious felony convictions receive a mandatory five-year enhancement. . . . This has resulted in mandatory additional terms for thousands of individuals incarcerated throughout California's prisons. This rigid and arbitrary system has meted out punishments that are disproportionate to the offense, which does not serve the interests of justice, public safety, or communities.' " (Assem. Com. on Pub. Safety,

Analysis of Sen. Bill No. 1393 (2017-2018 Reg. Sess.) as amended May 9, 2018, pp. 1-2.) The author urged that " '[a]llowing judicial discretion is consistent with other sentence enhancement laws and retains existing penalties for serious crimes.' " (*Id*. at p. 2.) As defendant observes, the Assembly Committee on Public Safety cited statistics showing that "as of September 2016, 79.9% of prisoners . . . had some kind of sentence enhancement; 25.5% had three or more." (*Id*. at pp. 3-4.) Another analysis suggested a prison cost savings of $15 million over five years if "100 defendants annually have the five-year enhancement struck . . . ." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1393 (2017-2018 Reg. Sess.) as amended May 9, 2018, p. 1.)

Defendant argues "[t]he legislative history therefore demonstrates that the Legislature's intent in enacting SB 1393 was to reduce prison overcrowding, save money, and achieve a more just, individualized sentencing scheme." The Legislature may have intended to modify the sentencing scheme, but the legislative history does *not* demonstrate any intent to overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement. Indeed, none of the legislative history materials mention plea agreements *at all*. What legislative intent can be discerned runs counter to defendant's position. As described, Senate Bill 1393 was intended to bring a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other enhancements. Thus, the Legislature gave a court the same discretion to strike a serious felony enhancement that it retains to strike any other sentence enhancing provision. Its action did not operate to change well-settled law that a court lacks

discretion to modify a plea agreement unless the parties agree to the modification.

Defendant relies on *Harris v. Superior Court*, *supra*, 1 Cal.5th 984 (*Harris*). Harris pled to felony grand theft (§ 487, subd. (c)) and admitted a prior robbery conviction in exchange for a six-year prison term and dismissal of a robbery count. (*Harris*, at pp. 987-988.) After passage of Proposition 47, which "reduced certain nonviolent crimes, including the grand theft from the person conviction in this case, from felonies to misdemeanors" (*Harris*, at p. 988), defendant petitioned to have his theft conviction resentenced as a misdemeanor. (See § 1170.18, subd. (a).) The People argued the reduction violated the plea agreement and sought to withdraw from the bargain. *Harris* rejected the claim: "Critical to this question is the intent behind Proposition 47. As we explained in *Doe v. Harris*, *supra*, 57 Cal.4th at page 66, entering into a plea agreement does not insulate the parties 'from changes in the law that *the Legislature has intended to apply to them*.' (Italics added.) Here, of course, it was not the Legislature, but the electorate, that enacted Proposition 47. So the question is whether the electorate intended the change to apply to the parties to this plea agreement. We conclude it did." (*Harris*, at p. 991.) Noting that section 1170.18, subdivision (a) specifically applied to a person "serving a sentence for a conviction, whether by trial or plea," *Harris* reasoned that "[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants." (*Harris*, at p. 991.) "The resentencing process that Proposition 47 established would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner."

(*Id*. at p. 992.) In such cases, " 'the financial and social benefits of Proposition 47 would not be realized, and the voters' intent and expectations would be frustrated.' " (*Ibid*.)

*Harris* also found additional support from *Doe*, which "stands for the proposition that 'the Legislature [or here, the electorate], for the public good and in furtherance of public policy, and subject to the limitations imposed by the federal and state Constitutions, has the authority to modify or invalidate the terms of an agreement.' [Citation.] The electorate exercised that authority in enacting Proposition 47. It adopted a public policy respecting the appropriate term of incarceration for persons convicted of certain crimes, including grand theft from the person. The policy applies retroactively to all persons who meet the qualifying criteria and are serving a prison sentence for one of those convictions, whether the conviction was by trial or plea. The electorate may bind the People to a unilateral change in a sentence without affording them the option to rescind the plea agreement. The electorate did so when it enacted Proposition 47." (*Harris*, *supra*, 1 Cal.5th at p. 992.)

*Harris* distinguished *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*). Pursuant to a plea bargain, Collins pled guilty to a single count of oral copulation under former section 288a in exchange for dismissal of 14 other felony counts. Prior to sentencing, the Legislature repealed former section 288a, decriminalizing "the act of oral copulation between consenting, nonprisoner adults . . . ." (*Collins*, at p. 211.) *Collins* reasoned the decriminalization of oral copulation applied retroactively under *Estrada* because the conviction was not yet final, and the defendant could not be sentenced for that offense. (*Collins*, at pp. 212-213.) However, *Collins* concluded the prosecution was entitled on remand to reinstate the dismissed counts because,

"[w]hen a defendant gains total relief from his vulnerability to sentence, the state is substantially deprived of the benefits for which it agreed to enter the bargain." (*Id*. at p. 215.) *Collins* reasoned: "Defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact. This is bounty in excess of that to which he is entitled. The intervening act of the Legislature in decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain—that defendant would be vulnerable to a term of imprisonment. The state may therefore seek to reestablish defendant's vulnerability by reviving the counts dismissed." (*Ibid*.)

*Harris* is distinguishable from the present case. Proposition 47 reduced to misdemeanors certain theft and drug offenses and created a mechanism to allow defendants to seek relief under the new law, even though they had already been sentenced. (See *People v. DeHoyos* (2018) 4 Cal.5th 594, 597-599; § 1170.18.) The resentencing provision applied to those "serving a sentence for a conviction, whether by trial or plea" (§ 1170.18, subd. (a)) and drew "no express distinction between persons serving final sentences and those serving nonfinal sentences, instead entitling both categories of prisoners to petition courts for recall of sentence." (*DeHoyos*, at p. 603.) The provision also allowed defendants who had already completed their sentences to have their offenses designated as misdemeanors. (§ 1170.18, subds. (f)-(h).) The electorate thus evinced an intent that these offenses be treated as misdemeanors no matter how or when a defendant suffered the conviction. As *Harris* reasoned, to allow the prosecution, in

response to a successful resentencing petition, to withdraw from a plea agreement and reinstate dismissed charges would frustrate electoral intent to treat these offenses uniformly as misdemeanors, essentially denying meaningful relief to those convicted through plea bargains. (See *Harris*, *supra*, 1 Cal.5th at p. 992.)

Similar considerations do not apply here. Nothing in the language and legislative history of Senate Bill 1393 suggests an intent to modify section 1192.5's mandate that "the court may not proceed as to the plea other than as specified in the plea" without the consent of the parties. As discussed, Senate Bill 1393's amendment of section 1385 now allows a trial court to strike a serious felony enhancement just as it may do with any other enhancement. Unlike in *Harris*, the remedy defendant seeks, to allow the court to strike the serious felony enhancement but otherwise retain the plea bargain, would frustrate the Legislature's intent to have section 1385 apply uniformly, regardless of the type of enhancement at issue, by granting the court a power it would otherwise lack for any other enhancement. That Senate Bill 1393 is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements.

Recently enacted Assembly Bill No. 1618 (2019-2020 Reg. Sess.), cited by defendant, does not change this analysis. That bill added section 1016.8, which codified our decision in *Doe* that the circumstance "the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them" (§ 1016.8, subd. (a)(1)), and clarified that any "provision of a plea bargain that requires a defendant to generally waive future benefits of

legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is void as against public policy" (§ 1016.8, subd. (b)). As we reasoned *ante*, we agree with defendant that Senate Bill 1393 should be applied retroactively to him, and the circumstance that his conviction resulted from a plea agreement did not change that conclusion. However, this bill, like *Estrada*, says nothing about the proper remedy should we conclude a law retroactively applies.

### 2. *Limited Remand Is Appropriate*

Although we reject defendant's contention that the court on remand should be allowed to exercise its discretion to reduce his prison term by five years but otherwise maintain the plea bargain, he is nevertheless entitled to some relief. The proper remedy requires an examination of the court's role in approving a plea agreement. "The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.] Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. [Citation.] This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment [citation], by the People's acceptance of a plea to a lesser offense than that charged, either in degree [citations] or kind [citation], or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information. . . . But implicit in all of this is a process of 'bargaining' between the adverse parties to the case—

the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in an agreement between them." (*People v. Orin* (1975) 13 Cal.3d 937, 942-943; see *Collins, supra,* 21 Cal.3d at p. 214; § 1192.5.) "Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and prosecution." (*Orin,* at pp. 942-943; see *People v. Martin* (2010) 51 Cal.4th 75, 79.)

The statutory scheme contemplates that a court may initially indicate its approval of an agreement at the time of the plea but that "it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter . . . ." (§ 1192.5.) "The code expressly reserves to the court the power to disapprove the plea agreement" up until sentencing. (*Kim, supra,* 193 Cal.App.4th at p. 1361.) "In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes. [Citation.] For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society . . . ." (*In re Alvernaz* (1992) 2 Cal.4th 924, 941.)

"[T]he court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea." (*People v. Johnson* (1974) 10 Cal.3d 868, 873.) "Generally, a trial court may exercise its discretion to withdraw approval of a plea bargain because: (1) it believes the agreement is 'unfair' [citation]; (2) new facts have come to light; (3) the court has become more fully informed about the case; or (4) when, after

further consideration, the court concludes that the agreement is
' " 'not in the best interests of society' " ' [citation].  But this list
is not exhaustive." (*People v. Mora-Duran* (2020) 45 Cal.App.5th
589, 595-596 (*Mora-Duran*).)

Guided by these principles, *People v. Ellis* (2019) 43
Cal.App.5th 925 (*Ellis*) addressed the proper remedy in the
present context.  Although *Ellis* agreed "that Senate Bill No.
1393 does not entitle defendants who negotiated stipulated
sentences 'to whittle down the sentence "but otherwise leave the
plea bargain intact," ' " the court reasoned "Senate Bill No. 1393
compels the conclusion that defendant is entitled to *seek* the
benefit of change in the law."  (*Ellis*, at pp. 943-944.)  *Ellis*
initially observed that, on remand, "the trial court may simply
decline to exercise its discretion to strike the enhancement and
that will end the matter."  (*Id.* at p. 944.)  "In other cases, the
trial court might conclude, upon the defendant's request, that it
is in the interest of justice to strike the enhancement.  In such
cases, it bears repeating that 'in the context of a negotiated plea
the trial court may approve or reject the parties' agreement, but
the court may not attempt to secure such a plea by stepping into
the role of the prosecutor, nor may the court effectively
withdraw its approval by later modifying the terms of the
agreement it had approved.' [Citations.]  'Yet, courts have broad
discretion to withdraw their approval of negotiated pleas.
[Citation.]  " 'Such withdrawal is permitted, for example, in
those instances where the court becomes more fully informed
about the case [citation], or where, after further consideration,
the court concludes that the bargain is not in the best interests
of society.' " [Citation.]  However, once a court withdraws its
approval of a plea bargain, the court cannot "proceed to apply
and enforce certain parts of the plea bargain, while ignoring"

others.  [Citation.]  Instead, the court must restore the parties to the status quo ante.' [Citations.]  Thus, while there may be cases in which the trial court will elect to strike the serious felony conviction enhancement, it is not without consequence to the plea bargain." (*Ibid.*, italics omitted.)

*Ellis* rejected the People's argument that a remand would be futile "because the trial court accepted the plea bargain and sentenced defendant to the stipulated sentence." (*Ellis*, *supra*, 43 Cal.App.5th at p. 945.)  After noting that the court, at the time of sentencing, was unaware of its discretion to strike the serious felony enhancement granted by Senate Bill 1393, *Ellis* reasoned:  "The parties agreed to a sentence of eight years four months, which the trial court approved and imposed.  We agree that if the court were to strike or dismiss the enhancement, or stay the sentence on the enhancement, defendant's sentence would be reduced significantly and, therefore, as set forth previously, there are consequences attendant to defendant's request for the court to exercise its discretion under Senate Bill No. 1393.  [Citations.]  However, the record does not clearly demonstrate that remand would be futile [citations], and the parties' plea bargain is not insulated from the changes in the law effected by Senate Bill No. 1393." (*Ellis*, at p. 946.)  *Ellis* concluded "defendant is entitled to a limited remand to allow him the opportunity to request relief under Senate Bill No. 1393." (*Ibid.*)

We are persuaded by *Ellis*.  At the time the court accepted the plea agreement and sentenced defendant, the law did not allow it to consider striking the serious felony enhancement in furtherance of justice under section 1385.  Senate Bill 1393 changed the law to allow such discretion, and we have now concluded that provision applies retroactively.  If he desires,

defendant should be given the opportunity to seek the court's exercise of its section 1385 discretion. If the court on remand declines to exercise its discretion under section 1385, that ends the matter and defendant's sentence stands.

However, if the court is inclined to exercise its discretion, as *Ellis* observed, such a determination would have consequences to the plea agreement. For the reasons discussed *ante*, the court is not authorized to unilaterally modify the plea agreement by striking the serious felony enhancement but otherwise keeping the remainder of the bargain. If the court indicates an inclination to exercise its discretion under section 1385, the prosecution may, of course, agree to modify the bargain to reflect the downward departure in the sentence such exercise would entail. Barring such a modification agreement, "the prosecutor is entitled to the same remedy as the defendant—withdrawal of assent to the plea agreement . . . ." (*Kim, supra*, 193 Cal.App.4th at p. 1362.)

Further, the court may withdraw its prior approval of the plea agreement. The court's authority to withdraw its approval of a plea agreement has been described as "near-plenary." (*People v. Stringham* (1988) 206 Cal.App.3d 184, 195; see *Mora-Duran, supra*, 45 Cal.App.5th at p. 595.) The court's exercise of its new discretion to strike the serious felony enhancement, whether considered a new circumstance in the case or simply a reevaluation of the propriety of the bargain itself, would fall within the court's broad discretion to withdraw its prior approval of the plea agreement. Section 1192.5 contemplates that "[a] change of the court's mind is thus always a possibility." (*Stringham*, at p. 194.)

In light of these potential consequences to the plea agreement, we emphasize that it is ultimately defendant's choice whether he wishes to seek relief under Senate Bill 1393. As *Ellis* reasoned: "Given that defendants in criminal cases presumably obtained some benefit from the plea agreement, we anticipate that there will be defendants who determine that, notwithstanding their entitlement to seek relief based on the change in the law, their interests are better served by preserving the status quo. That determination, however, lies in each instance with the defendant." (*Ellis*, *supra*, 43 Cal.App.5th at p. 944.) While it is true that defendant has consistently argued on appeal that Senate Bill 1393 should retroactively apply to him, his argument has always been coupled with his claim that the proper remedy should be to simply allow the trial court to reduce his sentence by five years while otherwise maintaining the remainder of the plea agreement. Now that we have rejected his proposed remedy, defendant's calculus in seeking relief under Senate Bill 1393 may have changed. Defendant should be allowed to make an informed decision whether to seek relief on remand.

*People v. Wilson* (2019) 42 Cal.App.5th 408 (*Wilson*) came to a contrary conclusion, reasoning a remand was not warranted: "[A]ssume that a trial court acting in the here and now, with the benefit of Senate Bill No. 1393, is presented with a stipulated plea that includes a five-year term under section 667, subdivision (a)(1). This, of course, means that the defendant has *agreed* to the five-year term. But let us indulge the fanciful notion that the trial court refuses to take the plea if it includes such a term because it would strike it. What would then happen? The trial court could not modify the plea to reduce it by five years. The trial court would have to reject the plea.

The prosecution would then find another way to get to its number, or the plea agreement would fall through. The point is this: what the trial court thinks the number should be is largely irrelevant, as this is not an open plea. A trial court must accept the negotiated plea or reject the bargain outright, but it cannot come up with its own number." (*Id*. at p. 414.)

*Wilson*'s reasoning misses the mark. It is settled that a court may evaluate the fairness of a proposed sentence in determining whether to approve the bargain. (See *People v. Segura* (2008) 44 Cal.4th 921, 931.) In that regard, "what the trial court thinks the number should be" is not irrelevant as *Wilson* suggested. (*Wilson, supra*, 42 Cal.App.5th at p. 414.) Further, it may not always be the case that the agreed-upon sentence can be reconstituted with other offenses or enhancements, and that, coupled with a court's exercise of its new found discretion to strike the serious felony enhancement, may lead the court to reevaluate the fairness of the bargained-for sentence. These new circumstances may also lead the parties to reevaluate what constitutes a fair disposition of the case. In any event, we agree with *Ellis* that short-circuiting this process by refusing a limited remand "would be effectively insulating the agreement from retroactive changes in the law, in contravention of the law."[6] (*Ellis, supra,* 43 Cal.App.5th at p. 946.)

---

[6] We disapprove *People v. Wilson, supra*, 42 Cal.App.5th 408.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed with directions to remand the matter to the superior court to allow defendant an opportunity to seek relief under Senate Bill 1393.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Stamps

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XX 34 Cal.App.5th 117
**Rehearing Granted**


_____


**Opinion No.** S255843
**Date Filed:** June 25, 2020

_____


**Court:** Superior
**County:** Alameda
**Judge:** James P. Cramer


_____


**Counsel:**

James S. Donnelly-Saalfield, under appointment by the Supreme Court, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Gerald A. Engler, Chief Assistant Attorneys General, Jeffrey M. Laurence, Assistant Attorney General, Seth K. Schalit, Eric D. Share, Elizabeth W. Hereford and René A. Chacón, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

James S. Donnelly-Saalfield
First District Appellate Project
475 Fourteenth Street, Suite 650
(415) 495-3119

Elizabeth W. Hereford
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3801