Filed 10/18/22 P. v. Sovalbarro CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B317652 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA095723) |
| v. | |
| ALEXANDER SOVALBARRO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Walgren, Judge. Affirmed.

Teresa Biagini, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy

Attorney General, Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.

_____

Alexander Sovalbarro pleaded no contest in June 2021 to one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and one count of disobeying a court order (§ 166, subd. (a)(4)). Pursuant to the parties' negotiated plea agreement, Sovalbarro was sentenced to the upper term of four years for aggravated assault with a one-year concurrent term for the misdemeanor charge; execution of sentence was suspended; and Sovalbarro was placed on four years of formal probation with various terms and conditions, including that he enter a 90-day treatment program and that he have no contact with the victim, his former girlfriend and mother of his child, Claudia F.

Six months later Sovalbarro violated the terms of his probation by contacting Claudia F. Following Sovalbarro's admission of the violation, the trial court terminated probation and ordered execution of the suspended sentence. On appeal Sovalbarro contends execution of the upper term sentence violated section 1170, subdivision (b), as amended by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) (Senate Bill 567), effective January 1, 2022, because no aggravating factors had been stipulated to or found true by a jury and his prior conviction for domestic violence had not been established by a certified record. We affirm.

_____

[1] Statutory references are to this code.

# FACTUAL AND PROCEDURAL BACKGROUND

1. *The Charges and Sovalbarro's Plea Agreement*

Sovalbarro was charged in a six-count felony complaint, filed December 23, 2020, with one count of assault with a deadly weapon (a knife) upon Claudia F. (§ 245, subd. (a)(1)); one count of injuring a spouse, cohabitant or child's parent, Claudia F. (§ 273.5, subd. (a)); felony and misdemeanor counts of vandalizing Claudia F.'s property (§ 594, subd. (b)(1) & (b)(2)(A)); and two counts of willful disobedience of a court order (§ 166, subd. (a)(4)). According to the preconviction probation report Sovalbarro punched Claudia F., his former girlfriend of five years, and threatened her while holding a knife. The report also stated Sovalbarro had been convicted in June 2019 of misdemeanor spousal/cohabitant battery and was serving 36 months of summary probation at the time of the charged offenses.

On June 18, 2021, pursuant to a negotiated agreement, Sovalbarro pleaded no contest to the aggravated assault count and one of the two counts of disobeying a court order. Asked by the court whether he concurred and stipulated "based on the report," defense counsel responded, "Yes, pursuant to *People v. West*." With respect to the agreed-upon sentence, the court asked Sovalbarro directly, "Do you understand what the agreement is, that you are going to receive execution of sentence suspended, high term of four years in state prison, which means you will be placed on probation. And if you violate any term or condition of probation and you are found in violation, you would be automatically sent to state prison for four years; not two years, not three years, but four years. Is that your understanding?" Sovalbarro answered, "Yes." The court then asked, "Is there any

3

question about that at all?" Sovalbarro answered, "No." Finally, the court asked defense counsel, "Did you explain that to him, Mr. Farias?" Defense counsel responded, "Yes, Your Honor."

The court then imposed and stayed execution of the agreed upper term sentence of four years for assault with a deadly weapon, placed Sovalbarro on four years of formal probation on condition that he serve 360 days in county jail (with credit for time served of 360 days), enter and remain in a 90-day residential drug treatment program, make restitution to the victim, stay at least 100 yards away from Claudia F., not threaten or harass her and obey the protective order issued in the case—all "pursuant to the plea agreement." The court also imposed a one-year concurrent term for the misdemeanor violation of section 166, subdivision (a)(4), and dismissed all other counts pursuant to the parties' plea negotiations.

2. *The Probation Violation and Execution of Sentence*

At a progress hearing concerning Sovalbarro's domestic violence counseling on December 14, 2021, the prosecutor advised the court that she had received information that Sovalbarro sent threatening text messages to Claudia F. and was in violation of the terms of his probation. Sovalbarro denied the allegation. The court summarily revoked probation, set January 13, 2022 as the date to schedule a formal probation violation hearing and remanded Sovalbarro to custody.

At the setting hearing Sovalbarro's counsel first argued that neither he nor Sovalbarro knew when Sovalbarro entered his plea that, as of January 1, 2022, a suspended sentence would be illegal, referring to section 1170, subdivision (b)(5), as amended by Senate Bill 567, which provides in part, "A term of imprisonment shall not be specified if imposition of sentence is

4

suspended."[2]  The court responded, "But imposition of sentence wasn't suspended.  Execution of sentence is suspended."

Counsel then argued new section 1170, subdivision (b)(2), which specifies a court may impose an upper term sentence only when there are circumstances in aggravation stipulated to by the defendant or found true beyond a reasonable doubt at trial, should apply to Sovalbarro, whose case was not yet final on appeal.  Counsel stated Sovalbarro was willing to stipulate to having had contact with Claudia F., a violation of the terms of probation, but only that, and urged the court to impose a middle term sentence of three years.

The court, after acknowledging the new provisions of section 1170, subdivision (b), stated a prior conviction may be considered as a factor in aggravation without a stipulation or submitting the prior conviction to a jury and noted Sovalbarro had a prior conviction for domestic violence and was on summary probation at the time of the aggravated assault.  The court stated, based on that prior conviction, "the four-year sentence would be appropriate."

Sovalbarro disputed he was on probation at the time of the offenses and objected to the four-year sentence, but agreed to admit the probation violation.  The court found his admission was knowing and intelligent, found Sovalbarro in violation of the terms and conditions of probation, revoked probation and ordered executed the previously agreed-upon four-year sentence.

---

[2]     Actually, this provision was part of section 1170, subdivision (b), when Sovalbarro entered his plea in June 2021 (see Stats. 2020, ch. 29, § 14), as it has been for decades (see, e.g., Stats. 1987, ch. 1423, § 2).

5

## DISCUSSION

1. *Senate Bill 567*

In *Cunningham v. California* (2007) 549 U.S. 270, 293 the United States Supreme Court held California's determinate sentencing law, which provided specified crimes were to be punished by one of three statutory terms of imprisonment (the lower, middle or upper term), violated a defendant's federal constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the extent it authorized the trial judge to find facts (other than a prior conviction) by a preponderance of the evidence that subjected a defendant to the possibility of an upper term sentence. As the Court explained, "Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, . . . the [determinate sentencing law] violates *Apprendi*[ *v. New Jersey* (2000) 530 U.S. 466]'s bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (*Id.* at pp. 288-289.)

Following the Supreme Court's decision in *Cunningham*, the Legislature amended section 1170, subdivision (b), effective March 30, 2007 as urgency legislation, to eliminate the statutory presumption for the middle term and, instead, to grant the trial court full discretion to impose the lower, middle or upper term. (Former § 1170, subd. (b); Stats. 2007, ch. 3. § 2 ["[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court"]; see *People v. Sandoval* (2007) 41 Cal.4th 825, 845.) As revised, section 1170

6

permitted the sentencing court to impose any of the three terms, eliminated the requirement of weighing the circumstances in aggravation against those in mitigation before selecting the upper term and required the court only to state reasons for the decision to permit appellate review for abuse of discretion. (See *Sandoval*, at pp. 843, 847.) The Legislature explained the intent of the 2007 urgency legislation was "to maintain stability in California's criminal justice system while the criminal justice and sentencing structures in California sentencing are being reviewed." The urgency legislation had a January 1, 2009 sunset date, which was extended multiple times through January 1, 2022. (See Stats. 2020, ch. 29, § 14.)

Senate Bill 567 was the Legislature's more fundamental response to the Sixth and Fourteenth Amendment issues addressed by the United States Supreme Court in *Cunningham v. California, supra*, 549 U.S. 270. (See Sen. Com. on Public Safety, Rep. on Sen. Bill No. 567 (2021-2022 Reg. Sess.) April 13, 2021.) Among other changes to the determinate sentencing law, section 1170, subdivision (b)(1), now provides, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term except as otherwise provided in paragraph (2)." Subdivision (b)(2), in turn provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . ." Subdivision (b)(3) creates an

exception to the limitation imposed by subdivision (b)(2), "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

Because Senate Bill 567's changes to section 1170, subdivision (b), limit the trial court's discretion to impose the upper term of imprisonment, it is an ameliorative change in the law (see *People v. Frahs* (2020) 9 Cal.5th 618, 628) and, as such, applies retroactively to nonfinal judgments under the principles articulated by the Supreme Court in *In re Estrada* (1965) 63 Cal.2d 740, 742. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465 ["[t]he People properly concede that Senate Bill No. 567's ameliorative amendments to section 1170, subdivision (b) apply retroactively to all cases not yet final as of January 1, 2022"; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 ["[t]he People correctly concede the amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal"]; see *People v. Esquivel* (2021) 11 Cal.5th 671, 674 ["'When the Legislature amends a statute so as to lessen the punishment[,] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage

provided the judgment convicting the defendant of the act is not final'"]; see also *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307.)

2. *The Trial Court Did Not Err by Ordering Execution of the Previously Suspended Upper Term Sentence Agreed to by Sovalbarro in the Plea Negotiations*

A case in which a defendant has been placed on probation with execution of an imposed state prison sentence suspended is not yet final for purposes of applying ameliorative legislation if the defendant, as here, could appeal an order revoking probation, causing the state prison sentence to take effect. (*People v. Esquivel, supra*, 11 Cal.5th at p. 673.) Thus, under *Estrada* principles section 1170, subdivision (b), as amended by Senate Bill 567, would apply to Sovalbarro's case. But as the Supreme Court cautioned in *People v. Stamps* (2020) 9 Cal.5th 685, 700, "The *Estrada* rule only answers the question of *whether* an amended statute should be applied retroactively. It does not answer the question of *how* that statute should be applied."

Here, the answer to the "how" question is that the limitations on the exercise of sentencing discretion enacted by the Legislature in Senate Bill 567 do not affect the trial court's discretion to accept a plea agreement with a stipulated upper term sentence. A negotiated plea is, in essence, a contract between the prosecutor and the defendant to which the court agrees to be bound. (*People v. Stamps, supra*, 9 Cal.5th at p. 701; *People v. Shelton* (2006) 37 Cal.4th 759, 767.) "'"When a guilty [or no contest] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement."'" (*People v. Segura* (2008) 44 Cal.4th

9

921, 930-931.)  The trial court may decide not to approve the terms of a plea agreement negotiated by the parties if it does not believe the agreed-upon disposition is fair, but it cannot change that bargain or agreement without the consent of both parties. (*Id*. at p. 931.)  If the court accepts the plea, "the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b); see *Stamps*, at p. 701 ["[w]hile no bargain or agreement can divest the court of the sentencing discretion it inherently possesses [citation], a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain"].)

Thus, when sentencing Sovalbarro, the court was not exercising its discretion to select a lower, middle or upper term and did not consider aggravating or mitigating factors; and section 1170, subdivision (b)(2)'s limitations on the imposition of an upper term sentence are not implicated.  (*People v. Mitchell* (Oct. 3, 2022, A163476) __ Cal.App.5th __, ___ [2022 Cal.App. Lexis 835, p. *8] [when sentencing appellant pursuant to a stipulated plea agreement, the trial court "had no opportunity to exercise any discretion in deciding whether the imposition of the upper, middle, or lower term would best serve 'the interests of justice'"].)[3]  Moreover, when Sovalbarro agreed to the plea, he

---

[3]  The trial court correctly pointed out it could consider a prior conviction as an aggravating factor without the defendant's stipulation or submitting the matter to a jury.  However, section 1170, subdivision (b)(3), requires that determination be based "on a certified record of conviction."  No certified record of Sovalbarro's domestic violence conviction was presented to the court when Sovalbarro entered his plea or at the January 13, 2022 hearing at which the stayed sentence was ordered executed. Although Sovalbarro did not object on this basis in the trial court

agreed to be bound by it and not to subsequently challenge the existence of any fact necessary to support his conviction and sentence. (See *People v. Hester* (2000) 22 Cal.4th 290, 295 ["[w]here the defendants have pleaded guilty in return for a *specified* sentence, appellate court will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction"]; Cal. Rules of Court, rule 4.412(a) ["[i]t is an adequate reason for a sentence or other disposition that the defendant, personally and by counsel, has expressed agreement that it be imposed and the prosecuting attorney has not expressed an objection to it"].)

*People v. Brooks* (2020) 58 Cal.App.5th 1099 (*Brooks*) supports this view. In *Brooks* the defendant agreed to a stipulated sentence as part of a negotiated plea agreement. (*Id.* at p. 1102.) After he was sentenced, the Legislature enacted section 1170.91, which retroactively required the trial court to consider trauma a defendant suffered as a result of military service as a factor in mitigation when imposing a sentence under section 1170. (*Brooks*, at pp. 1103-1104.) The trial court denied the defendant's petition to recall his sentence pursuant section 1170.91, finding it was not authorized to resentence him because he had stipulated to a specific term in his plea agreement. (*Id.* at pp. 1102-1103.) The court of appeal affirmed,

---

(he insisted he had not been on probation when he assaulted Claudia F., but did not suggest he had not suffered the prior conviction), the Attorney General does not argue the trial court properly relied on the prior conviction to satisfy section 1170, subdivision (b)'s new requirements for imposing an upper term sentence and that any procedural error was, therefore, harmless.

concluding, because the defendant had stipulated to his sentence in his plea agreement, the trial court had not applied judicial discretion at the time it sentenced him and it had no power to do so on resentencing because that would unlawfully modify the terms of his plea agreement. (*Id.* at pp. 1106-1107.) That is, once the trial court accepted the plea agreement, it was required to impose the sentence to which the parties had agreed in their plea bargain: "'A trial court that sentences under subdivision (b) of section 1170, exercises its discretion to choose an upper, middle or lower determinate term based on its consideration of factors in mitigation and aggravation. However, when a trial court sentences a defendant who has agreed to a stipulated sentence for a term of years, the trial court exercises no discretion to decide between an upper, middle and lower term and may not consider factors in mitigation and aggravation.'" (*Id.* at p. 1109; accord, *People v. Pixley* (2022) 75 Cal.App.5th 1002, 1008; *People v. King* (2020) 52 Cal.App.5th 783, 790-791.)

We recognize, as Sovalbarro argues in his reply brief,[4] that section 1170.91, at issue in *People v. Brooks, supra,*

_____

[4]    In his opening brief Sovalbarro did not directly address whether Senate Bill 567's limitations on the exercise of sentencing discretion apply to the trial court's discretion to accept a plea agreement with a stipulated sentence. He argued only that his no contest plea, although admitting the elements of the aggravated assault, did not constitute an admission of any aggravating circumstances (citing *People v. French* (2008) 43 Cal.4th 36, 49) and the various factors identified by the trial court at the January 13, 2022 hearing as supporting the previously agreed-upon upper term four-year sentence (for example, that he was on probation when he assaulted Claudia F.) did not satisfy the new requirements of section 1170, subdivision (b)(2) and (3): He did not stipulate to any of them;

12

58 Cal.App.5th 1099, mandated only that the trial court consider an additional mitigating factor before imposing sentence—adding a new consideration to an already existing determination—while Senate Bill 567's amendments to section 1170, subdivision (b), preclude the trial court from imposing the upper term unless it finds circumstances in aggravation. But, as discussed, in deciding whether to accept the parties' plea agreement with a stipulated sentence, the trial court has no discretion to determine whether to impose the middle or upper term—there is no triad sentencing at all. The court either accepts the agreement as negotiated or it does not. (*People v. Stamps*, *supra*, 9 Cal.5th at p. 701; *People v. Segura*, *supra*, 44 Cal.4th at p. 931; *People v. Mitchell*, *supra*, __ Cal.App.5th at p. ___ [2022 Cal.App. Lexis 835, at p. *11] ["[a]ppellant agreed to a term of six years pursuant to a stipulated plea and the trial court simply sentenced appellant according to the terms of the plea agreement"].) Any requirements or limitations on the court's exercise of its sentencing discretion, therefore, are simply not applicable. (See *People v. Hester*, *supra*, 22 Cal.4th at p. 295; cf. *People v. French* (2008) 43 Cal.4th 36, 49 [noting, in holding that a defendant whose plea agreement included a sentence range was entitled at a sentencing hearing to litigate matters relating to the trial court's choice of sentence, "defendant did not agree that a specified sentence would be imposed"].)[5]

---

none was submitted to a jury; and his domestic violence conviction was not established by a certified record.

[5]     If, as in *People v. French*, a defendant's plea agreement provided for a sentence range that permitted, but did not require, imposition of an upper term, and the defendant was thereafter sentenced to the upper term, resentencing pursuant to

13

### 3.  *Sovalbarro Is Not Entitled to a* Stamps *Remand*

Sovalbarro argues, as an alternative to his contention his agreed-upon sentence must be reduced to the middle term of three years absent an admission of aggravating factors, that the cause should be remanded and the plea agreement rescinded if the prosecutor does not agree to the downward adjustment.  This attempted analogy to the limited remand procedure authorized in *People v. Stamps*, *supra*, 9 Cal.5th 685 is equally flawed.

In *Stamps* the defendant entered into a plea agreement for a specified term that included a prior serious felony enhancement pursuant to section 667, subdivision (a).  While his appeal was pending, Senate Bill No. 1393 (Stats. 2018, ch. 1013, §§ 1, 2) went into effect, permitting the trial court to strike the serious felony enhancement in furtherance of justice, which it was not previously authorized to do.  After rejecting the defendant's argument he was entitled to have the cause remanded for the trial court to consider whether to strike the enhancement while otherwise maintaining the plea agreement intact—in effect, the relief Sovalbarro seeks with his request that his sentence be reduced to the middle term—the Supreme Court held the defendant could ask the trial court whether it would approve a new plea agreement without the enhancement.  As the Court explained, if the court said no, "that ends the matter and defendant's sentence stands." (*People v. Stamps*, *supra*, 9 Cal.5th at p. 707.)

---

section 1170, subdivision (b), would be necessary in the absence of a stipulation to the facts supporting the upper term or a certified record of a prior conviction.  (See *People v. French*, *supra*, 43 Cal.4th at pp. 48-49.)

14

That is precisely what happened at the setting hearing on January 13, 2022. Sovalbarro's counsel asked the court to reconsider Sovalbarro's agreement to a four-year, upper-term sentence (with execution suspended) in light of the passage of Senate Bill 567. The court responded the sentence remained appropriate. Under the *Stamps* model, assuming it applies, Sovalbarro had no unilateral right to rescind the agreement. The court's decision not to reconsider the plea agreement ended the matter.[6]

It may be useful on a going-forward basis for the trial court, when taking a plea with a stipulated upper term sentence, to have the defendant admit the aggravating factors necessary to support the upper term as part of the factual statement of the offense if for no other reason than to avoid the type of issue raised in this appeal. But Sovalbarro agreed to imposition of the upper term of four years for aggravated assault; and the trial court, in accepting the parties' plea agreement, was bound to enforce it according to its terms. Sovalbarro has no right to resentencing under Senate Bill 567.

---

[6] In any event, Sovalbarro had already enjoyed the benefits of the plea agreement: He remained out of custody on probation for the second half of 2021. By the time he violated the conditions of probation and faced execution of the suspended term of the plea agreement, it was far too late to seek rescission. (See *People v. Hester*, *supra*, 22 Cal.4th at p. 295 ["defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process"]; cf. Civ. Code, § 1691 [to effect a rescission a party must, among other things, "[r]estore to the other party everything of value which he has received"].)

## DISPOSITION

The judgment is affirmed.


                                              PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.