Filed 5/18/21  P. v. Myers CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NOEL SEAN MYERS,<br><br>    Defendant and Appellant. | D077525<br><br><br>(Super. Ct. No.  SCN305431) |

APPEAL from an order of the Superior Court of San Diego County, K. Michael Kirkman, Judge.  Affirmed.

Pauline E. Villanueva, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

Noel Sean Myers pled guilty to willful cruelty to an elder (Pen. Code,[1] § 368, subd. (b)(1); count 1) and two counts of assault with a deadly weapon on a peace officer (§ 245, subd. (c); counts 3 and 5). Myers admitted that, as to count 1, he personally inflicted great bodily injury upon an elder, aged 70 years of age or older (§ 12022.7, subd. (c)) and that he, as to count 5, personally inflicted great bodily injury (§ 12022.7, subd. (a)). Myers also admitted that he had a serious felony prior conviction and a strike prior conviction. (§ 667, subds. (a)(1) & (b)-(i).)

Pursuant to a plea bargain agreement, the court sentenced Myers to prison for 24 years four months, consisting of eight years on count 1, two years eight months on count 3, two years eight months on count 5, six years on the two great bodily injury enhancements, and five years on the serious prior felony conviction enhancement.

After serving more than five years in prison, a representative from the California Department of Corrections and Rehabilitation (CDCR) wrote to the superior court recommending that the court recall Myers's sentence and resentence him under the court's new authority per section 1170, subdivision (d) as provided by Senate Bill No. 1393 (2017-2018 Reg. Sess.). That subdivision provides the court discretion to strike Myers's five-year serious felony enhancement. (See § 1170, subd. (d).) Myers then filed a petition to recall his sentence and strike the serious felony prior enhancement. The superior court denied the petition.

Myers appeals, contending the superior court erred in not properly considering his rehabilitation while in custody and improperly considering the plea agreement as well as the court's own beliefs about the criminal

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

justice system.  Moreover, he claims the court also erred by failing to order a supplemental probation report.  We conclude Myers's contentions are without merit.  We thus affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In the afternoon on May 8, 2012, Myers knocked down his father (D.M.) and broke his leg.  D.M. provided officers investigating the incident with permission to enter his residence to look for Myers.

Upon entering the residence, officers identified themselves and found Myers laying down in a corner of the loft.  When officers asked Myers his name, he responded, "Get the fuck out."  An officer then tried to talk to Myers about the incident, but he continued to yell obscenities and grabbed something in his right hand.  Myers raised the object and took aim toward the officer.

The officer ran toward the entry of the residence and heard glass break behind him as the object Myers threw hit the ground and shattered.  Myers then began throwing rocks, glass items, and other objects at the officers, who took cover to avoid being hit.  Officers continued to try to talk to Myers as he continued to yell and throw items.

Myers then held up a machete, which consisted of a 25 inch blade with tape around the handle.  He threw the machete at one of the officers.  Myers also threw a VCR and television downstairs in the officers' direction.

Myers walked downstairs when an officer told him to come outside to talk.  After Myers reached the bottom of the stairs, he told the officers that he

---

[2]    Because Myers pled guilty, we summarize the facts of his underlying offenses as set forth in the probation report, which was based on an Oceanside Police Department report as well as the preliminary hearing transcript.  The preliminary hearing transcript, however, is not part of the record before us.

3

was grabbing a weapon. He picked up what the officers believed was a hunting rifle and held it with the barrel upward. He then continued to yell and waved the rifle. Officers pointed their guns at Myers and ordered him to put down the rifle. Myers refused and turned away from the officers.

The officers vacated the building and waited for additional units to arrive. When they learned that the rifle Myers had was possibly a pellet gun, they left the scene.

Two days later, officers responded to a radio call of an assault with a deadly weapon. They realized that the incident in question again involved Myers. After arriving at the residence, officers attempted to convince Myers to leave his residence because they had a warrant for his arrest. Myers refused.

Officers then took a containment position near the residence and the decision was made to utilize the SWAT team. Myers began firing pellets or BB rounds at the officers. Officers could also see Myers filling up glass bottles with a liquid substance from a gas can. Later, a glass bottle shattered on the ground, which contained a liquid substance smelling like gas and a rag lying near it.

Myers again began shooting at the officers and hit one with a BB round near his eye. The BB had to be surgically removed later. Another officer was struck in the helmet by a BB but was not injured.

After using .40mm sponge impact rounds as well as chemical agents, the officers were finally able to get Myers to exit his residence, and they took him into custody.

Myers was charged with willful cruelty to an elder (§ 368, subd. (b)(1); count 1); making a criminal threat (§ 422; count 2); three counts of assault with a deadly weapon on a peace officer (§ 245, subd. (c); counts 3, 5, and 6);

4

exhibiting a deadly weapon to a police officer to resist arrest (§ 417.8; count 4); and possession of flammable material (§ 453, subd. (a); count 7). In addition, as to count 1, it was alleged that Myers personally inflicted great bodily injury on D.M. within the meaning of section 1192.7, subdivision (c)(8) and personally inflicted great bodily injury upon D.M., a person 70 years of age or older, within the meaning of section 12022.7, subdivision (c). Regarding count 5, it was alleged that Myers personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a). Finally, Myers was alleged to have a serious felony prior (§§ 667, subd. (a)(1), 1192.7, subd. (c)) and a strike prior (§§ 667, subds. (b)-(i), 1170.12, and 668.)

Per a plea agreement, Myers pled guilty to counts 1, 3, and 5 as well as admitting the allegations under section 12022.7, subdivision (a) (for count 5) and subdivision (c) (for count 1). Myers also admitted a prior serious felony and a strike prior. The remaining counts and allegations were dismissed. As agreed, the court sentenced Myers to prison for 24 years four months.

DISCUSSION

I

MYERS'S PETITION TO RECALL HIS SENTENCE

A. Myers's Contentions

Myers argues the superior court abused its discretion in denying his petition to recall his sentence and strike his five-year enhancement for his prior serious felony. Specifically, he claims the court did not consider his positive rehabilitation during his prison term and improperly relied on the stipulated plea agreement and its own opinions about the nature of

5

sentencing in criminal law. In addition, he insists the court erred in not requesting a supplemental probation report that detailed his good behavior in prison.

## B. Background

After the CDCR sent its letter to the superior court requesting it recall Myers's sentence and resentence him according to the court's new discretion under Senate Bill No. 1393, Myers filed a petition requesting the same relief. The People opposed the petition, arguing that the requested relief should be denied based on the unique facts of the case.

During oral argument on the petition, Myers's counsel specifically asked the court to consider Myers's postconviction behavior. Counsel argued:

> "The final argument, if we get to the decision to actually recall the sentence, I think what's important for the Court to focus on is, first and foremost, the CDCR recognized that Mr. Myers, given the activities he's engaged in while incarcerated, was a good candidate for a recall and at least a consideration of whether to resentence him. They have an entire system set up to screen inmates to then assess whether those inmates would be good candidates based on their conduct, which this Court can specifically look to under 1170(d), post conviction activities, in order to determine whether or not it's going to recall a sentence."

After considering the papers and entertaining oral argument, the superior court denied the petition. It assumed it had discretion to strike the enhancement and explained why it did not do so. To this end, the court stated:

> "I take into account a variety of factors: the defendant's criminal history; the severity of the case; the violence carried out, indeed, against a number of separate victims, both civilian and law enforcement, as pointed out by the prosecution on multiple occasions; a variety of weapons utilized; serious injuries inflicted; prior threats to kill; prior

6

violent history, which included four armed bank robberies, resulting in a federal prison term."

The court noted its belief that there should be finality in the criminal law for the defendants as well as the victims. It questioned whether the justice system should allow sentences to be revisited and reduced "simply because we can."

The court then made an additional comment about the importance of upholding plea agreements: "I just make this additional further comment, and that is that whether exception is taken or not, I think ultimately that the reasoning that a stipulated agreement ought to stand is that it, quite frankly, is a sounder position . . . . and I think contracts ought to be upheld."

After denying the petition, the court commended Myers for doing "well while incarcerated" and "encourage[d] him in that regard."

C.  Analysis

Senate Bill No. 1393 amended sections 667 and 1385, effective January 1, 2019, deleting the provisions in those statutes that prohibited a trial judge from striking a section 667 prior serious felony conviction enhancement in furtherance of justice. (Stats. 2018, ch. 1013, §§ 1-2.)  It applies retroactively to all cases or judgments of conviction in which a five-year term was imposed at sentencing, based on a prior serious felony conviction, provided the judgment of conviction is not final. (*People v. Stamps* (2020) 9 Cal.5th 685, 699; *People v. Garcia* (2018) 28 Cal.App.5th 961, 971-972.)

Under section 1170, subdivision (d)(1), upon recommendation of the secretary of the CDCR, a court may recall a defendant's prison sentence and resentence him. A court resentencing a defendant may, in determining whether to reduce a defendant's sentence, "consider postconviction factors, including, but not limited to, the inmate's disciplinary record and record of

7

rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice." (§ 1170, subd. (d)(1).)

"We review a court's decision to deny a motion to strike a five-year prior serious felony enhancement for an abuse of discretion. No error occurs if the trial court evaluates all relevant circumstances to ensure the punishment fits the offense and the offender." (*People v. Shaw* (2020) 56 Cal.App.5th 582, 587 (*Shaw*).)

Turning to the record before us, we conclude no abuse of discretion occurred. The court considered the relevant factors and concluded "given the totality of the defendant's criminal conduct over time, that this recidivist statute that takes into account that someone in the past has been convicted of a serious and/or violent felony, indeed was appropriately applied by the Court, regardless of any stipulated agreement between the parties." The court emphasized Myers's "criminal history" and "prior violent history" as well as "the severity of the case[,]" including "the violence carried out," and the "serious injuries inflicted."

Additionally, we are not troubled by the court's reference to Myers's plea agreement or its comments about sentencing in general. The court made these comments in the context of explaining its belief that the plea agreement benefited Myers while noting that Myers, based on his criminal history and the conduct involved in his offenses, faced a term in excess of 31 years if he proceeded to trial. Such comments are akin to a trial court reiterating the justifications for a defendant's sentence when faced with a recall and resentence petition. (See *Shaw*, *supra*, 56 Cal.App.5th at p. 588 [concluding

no abuse of discretion].)  Also, the court did not take the position that it had no discretion to recall and resentence Myers in light of the plea agreement. Indeed, the court assumed it had discretion and then declined to exercise it to strike Myers's five-year enhancement for the prior serious felony.

Myers additionally contends the court did not properly take into account his postconviction conduct.  In support of this position, he urges us to follow *People v. Yanaga* (2020) 58 Cal.App.5th 619 (*Yanaga*).  That case is not helpful to Myers.

In *Yanaga*, the appellate court concluded that the trial court prejudicially erred because it was not aware of the scope of its discretion to consider the defendant's postconviction rehabilitative efforts in evaluating the defendant's motion to strike a firearm enhancement under section 12022.53, subdivision (h).  (*Yanaga, supra*, 58 Cal.App.5th at pp. 622, 626-629.)  However, in that case, the trial court expressly refused to consider the defendant's in prison rehabilitative efforts under the erroneous belief that it could only consider the information that had been before the original sentencing court.  (*Id.* at pp. 622, 624.)

Here, there is no such showing in the record.  To begin the hearing on Myers's petition, the court pointed out that the matter was before it under section 1170, subdivision (d).  That subdivision specifically refers to a recommendation from the secretary of the CDCR for a defendant's sentence to be recalled and the defendant resentenced.  Further, the subdivision explicitly states that the court *may* consider postconviction factors.  (See § 1170, subd. (d)(1).)  In addition, Myers's counsel told the court that it could consider Myers's postconviction conduct.  And Myers's petition attached the CDCR letter as an exhibit.  The court did not disagree with Myers's counsel that it could consider such evidence.  Moreover, the court commended Myers

9

for his positive rehabilitative efforts in prison.  Against this backdrop, we see no basis on the record before us to conclude the superior court did not realize it had the discretion to consider Myers's postconviction conduct.

Finally, Myers argues the superior court prejudicially erred by failing to order a supplemental probation report.  The parties disagree whether the superior court was required to order a supplemental probation report under California Rules of Court, rule 4.411 (Rule 4.411).[3]  Yet, even if we assume the court was required to order a supplemental probation report, we conclude Myers was not prejudiced under any standard.

Here, Myers claims a supplemental probation report was necessary to provide the superior court with the updated information to aid the court in resentencing him.  However, the only additional information Myers points to is his postconviction behavior.  As we discussed *ante*, the court was aware of Myers's postconviction rehabilitative conduct through the CDCR's letter, Myers's petition, and Myers's counsel's oral argument on the petition.  Myers makes no compelling argument that any information contained in a supplemental probation report would have had any impact on the court's

---

[3]    "[T]he court must refer the case to the probation officer for:  [¶]  (1) A presentence investigation and report if the defendant: . . . [¶]  [¶]  (B) Is not eligible for probation but a report is needed to assist the court with other sentencing issues, including the determination of the proper amount of restitution fine."  (Rule 4.411(a)(1)(B).)

decision not to strike the five-year enhancement. Accordingly, we determine that Myers has not been prejudiced by a lack of a supplemental probation report.[4]

DISPOSITION

The order is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.



GUERRERO, J.

---

[4]     To the extent Myers asserts the court had to order a supplemental probation report because a significant period of time had passed since the original report was prepared (see Rule 4.411(a)(2)), case law suggests that such a supplemental report is required only if the defendant is eligible for probation. (See *People v. Johnson* (1999) 70 Cal.App.4th 1429, 1432.) Myers was not eligible for probation.