Filed 10/3/24  P. v. Dixon CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ANDREW K. DIXON,<br><br>      Defendant and Appellant. | A170326<br><br>(Napa County<br>Super. Ct. No. 23CR002101) |

Under a plea agreement, defendant Andrew Dixon was sentenced to six years and four months in prison.  He appealed, and the trial court denied his request for a certificate of probable cause.  Dixon's appellate counsel asked this court for an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Dixon then filed a supplemental brief raising several issues.

We conclude that the claims raised by Dixon lack merit.  After independently reviewing the record, we find no other arguable issues.  Thus, we affirm, except we order that a clerical error in a minute order be corrected.

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

On the morning of September 16, 2023, the power went out at the Silverado Trail home of 61-year-old J.B. and his wife.[1] When J.B. went outside to investigate the power outage, he saw a man, later identified as Dixon, standing next to the electrical panel. Dixon was holding "a large knife" with the blade pointed at J.B. J.B. asked what Dixon was doing, and Dixon "lunged towards him with the knife." During the ensuing struggle, Dixon stabbed J.B. in the back, causing "a stab wound approximately 2 to 3 inches in length . . . on his lower back" that required stitches.

J.B. pulled the knife out of his own back and stabbed Dixon. Dixon started to run away, and J.B. "tackled him." J.B. yelled for his wife to call 911, and he was able to detain Dixon until law enforcement arrived. While J.B. was holding Dixon, Dixon asked whether J.B. was "with the KKK" and was "talking [g]ibberish."

A few minutes before the power went out, the home's surveillance cameras had recorded a man walk into the home's patio and then toward the outdoor electrical panel. Later investigation revealed that the panel's switches were all "turned in the off position," a window screen had been removed from a building on the property, and someone other than J.B. or his wife had recently been inside that building. Dixon later told law enforcement that he wanted "to go inside and eat some food" because he was hungry, and he turned off the power once he noticed the cameras so he would not "get in any trouble."

---

[1] The underlying facts are drawn from the preliminary hearing transcript, to which Dixon stipulated as the factual basis for his plea.

2

An information charged Dixon with felony counts of attempted murder, assault with a deadly weapon, attempted first degree burglary, and second degree burglary.[2]  It was alleged that he personally used a deadly or dangerous weapon during the attempted murder and attempted burglary and that he personally inflicted great bodily injury (GBI) during the attempted murder and the assault with a deadly weapon.[3]  Finally, as to all the counts except second degree burglary, the information alleged three aggravating factors under California Rules of Court, rule 4.421(a) and (b):  that the crimes involved acts disclosing a high degree of cruelty, viciousness, or callousness; that Dixon was armed with a weapon; and that he was engaged in violent conduct indicating a serious danger to society.

Under a plea agreement, Dixon pled no contest to the counts of assault with a deadly weapon, attempted first degree burglary, and second degree burglary.  He also pled no contest to the GBI allegation accompanying the assault count and admitted the three aggravating factors.  In exchange, it was agreed that he would be sentenced to six years and four months in prison, including a three-year term for the GBI enhancement, and the remaining charge and allegations were dismissed.

In March 2024, the trial court sentenced Dixon to the agreed-upon term, composed of the low term of two years for assault with a deadly weapon, a consecutive term of three years for the GBI enhancement, and consecutive terms of eight months each, one-third the midterm, for the

---

[2] The charges were brought under Penal Code sections 187 and 664 (attempted murder) 245, subdivision (a)(1) (assault with a deadly weapon), 459 and 664 (attempted burglary), and 459 (burglary).  All further statutory references are to the Penal Code.

[3] The deadly-weapon allegations were made under section 12022, subdivision (b)(1), and the GBI allegations were made under section 12022.7, subdivision (a).

remaining two convictions.  Dixon appealed and sought a certificate of probable cause on the basis that "after researching the allegation of [GBI] after getting sentenced," he "believe[d] that [J.B.'s] wound is not GBI."  The trial court denied the request.

## II.
### DISCUSSION

In his supplemental brief, Dixon raises two categories of issues.  First, he claims his trial counsel rendered ineffective assistance in several respects, including by failing to explain the charges and the plea's consequences and by failing to seek mental health diversion.  Second, he claims the trial court should have exercised its discretion to strike the GBI enhancement under section 1385.  These contentions fail.

We begin with Dixon's claims of ineffective assistance of counsel.  "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Here, there is nothing in the record supporting Dixon's contentions that his trial counsel "failed to explain" the plea or the consequences of the GBI enhancement and did not provide Dixon's "discovery report till after the plea."  Nor does the record preclude the conclusion that counsel may have had a rational reason for failing to seek mental health diversion.  Although the circumstances of the crimes suggest Dixon might have been experiencing mental health problems, counsel could have concluded that he was likely to be found ineligible or unsuitable for diversion for any number of reasons, such as that he posed "an unreasonable risk of danger to public safety . . . if

4

treated in the community." (§ 1001.36, subd. (c)(4).) In sum, the record before us fails to demonstrate any ineffective assistance of counsel.

Dixon also claims that under section 1385, the trial court should have given "[g]reat consideration" to striking the GBI enhancement in light of his mental health issues. He states that he is "diagnosed with major depression and major anxiety" and that during the crimes, he "was deep in a depressive episode after the death of [his] father and was self-medicating on methamphetamine." It is true that in determining whether to strike an enhancement, trial courts must "consider and afford great weight to evidence offered by the defendant to prove" certain mitigating circumstances, including that "[t]he current offense is connected to mental illness." (§ 1385, subd. (c)(2)(D).) But Dixon agreed to a three-year term for the GBI enhancement under the plea bargain, precluding him from challenging the enhancement on appeal unless he obtained a certificate of probable cause. (See *People v. Stamps* (2020) 9 Cal.5th 685, 694–695, 700.) Although his appellate counsel raises the question of whether the trial court improperly denied the request for a certificate, Dixon did not seek writ review of that ruling. (See *People v. Johnson* (2009) 47 Cal.4th 668, 676.) In any case, as part of the plea agreement he waived his right to appeal from matters affecting the plea's validity. Thus, Dixon also fails to identify any arguable issues involving section 1385.

After independently reviewing the record, we discern no other potentially meritorious issues. Dixon was advised of his constitutional rights and the consequences of his plea before he entered it, and he received the sentence promised under the plea agreement. The trial court found that his waiver of rights was knowing and intelligent, that the plea was free and voluntary, and that there was a factual basis for the plea. Finally, he was

5

represented by counsel throughout the proceedings, and as discussed above the record does not reveal any ineffective assistance of counsel.

There is, however, a clerical error in the minute order from the sentencing hearing. Under the heading "PROTECTIVE ORDER," the minute order states, "The Court executes the Criminal Protective Order (CLETS). [¶] Copy of said order is provided to defendant in open Court this date." The plea agreement indicates that Dixon accepted a "10 yr. CLETS order for victims," and at the end of the sentencing hearing the prosecutor stated, "The CLETS order will be provided once—" The trial court interrupted and said, "The Court will sign the CLETS order once you have provided it." But no such order is in our record, and the reporter's transcript of the sentencing hearing does not reflect that Dixon received one. Moreover, it appears there was no statutory authority for issuing a postconviction criminal protective order in this case. (See *People v. Robertson* (2012) 208 Cal.App.4th 965, 995–996.) Thus, we order that the language about a CLETS order be stricken from the sentencing minute order.

### III.
### DISPOSITION

The clerk of the superior court is directed to amend the March 22, 2024 minute order to remove the references to a CLETS order. The judgment is otherwise affirmed.

 

                                        _____

                                        Humes, P. J.

WE CONCUR:

_____

Banke, J.

_____

Hill, J.*

     *Judge of the Superior Court of the County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Dixon*  A170326