Filed 12/31/25  P. v. Cooks CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B341301 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24AVCF01274) |
| v. | |
| BRENNEN MICHAEL COOKS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Lisa M. Strassner, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, and Lauren Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

# I.    INTRODUCTION

Defendant Brennen Michael Cooks appeals from a robbery conviction entered following a plea, arguing that the judgment should be reversed because his waiver of the right to withdraw the plea under *Cruz*[1] was not knowing and voluntary.  We affirm.

# II.    BACKGROUND

## A.    *Complaint*

On August 20, 2024, the Los Angeles County District Attorney (District Attorney) charged defendant in a felony complaint with second degree robbery in violation of Penal Code section 211.[2]  The District Attorney also alleged that defendant had:  served a prior prison term; previously performed unsatisfactorily on probation, mandatory supervision, post-release community supervision, and parole; engaged in violent conduct that indicated a serious danger to society; and sustained two prior felony convictions.

---

[1]     *People v. Cruz* (1988) 44 Cal.3d 1247, 1249 [A defendant who "pleads guilty pursuant to a plea bargain which is subsequently disapproved by the trial court shall be permitted to withdraw the plea if he or she so desires"] (*Cruz*).)

[2]     All further statutory references are to the Penal Code.

B.   *Change of Plea and* Cruz *Waiver*

On August 26, 2024, defendant completed and filed a "Plea Form, with Explanations and Waiver of Rights—Felony."  He placed his initials next to, among other items, item 6(e) which stated:  "I understand that if the court approves this plea agreement the approval of the court is not binding, and that the court may withdraw its approval of the plea agreement upon further consideration of the matter.  I understand that if the court withdraws its approval of this plea agreement I will be allowed to withdraw my plea.  (. . . § 1192.5.)"  Defendant also initialed item 10(a) which stated:  "I agree that if I fail to appear on the date set for surrender or sentencing without a legal excuse, my plea will become an 'open plea' to the court, I will not be allowed to withdraw my plea . . . ."  Defendant's attorney signed the form, acknowledging that he "explained each of the items in the form" to defendant, including "the consequences of the plea."

On that same date, the trial court conducted a change of plea hearing,[3] at which it stated its understanding that there was "going to be a resolution in this case wherein [defendant will] be pleading no contest or guilty as to count 1 as a violent strike [in exchange] for two years of formal probation" and other standard terms.  The court asked defendant if he was willing to accept those terms, and defendant responded in the affirmative.

The trial court next confirmed with defendant that he had signed and initialed the plea form and had "read and understood all of the constitutional rights that [were] contained within [that] document, including the right to a speedy jury trial . . . and all of

---

[3]    The plea hearing took place before Judge Scott Yang.

3

the rights that flow[ed] from that." The court also confirmed with defendant that he was "going to waive and give up all of [his] constitutional rights and . . . accept all the consequences of [his] impending plea[.]"

After advising defendant of the consequences of his plea, the trial court asked the prosecutor if he could explain "why [the prosecution] made this offer when [defendant had] a kidnapping in 2013 and his last felony conviction was two years ago out in Riverside[.]" The prosecutor responded, "[T]his offer was provided by [a different prosecutor]. But I believe his reason was . . . in this case it's alleged the defendant and a couple of other folks went into the Family Fashion store, selected pants off the rack. When the victim, owner attempted to stop . . . defendant from leaving[,] he pushed the victim out of the way and then continued on. Later on he admitted the incident but denied pushing. This is an early disposition offer. The offer would have expired today." The prosecutor added that the value of the clothing taken was $40. The court observed, seeming to address the defendant, "I think you got a phenomenal deal."

After accepting defendant's no contest plea, the trial court asked defendant whether he agreed that his sentencing hearing could be scheduled for September 17, 2024. Defendant agreed. The court then informed defendant that he would be sentenced on September 17, 2024, in Department A18 by Judge Lisa Strassner. The court next advised defendant of the consequences of failing to appear for the scheduled sentencing hearing: "In the event you don't show up on September 17th to be sentenced in Department A18 at 8:30 in the morning by Judge Strassner, or if you pick up a new case from now [until] then, what's going to happen is your plea will remain, but the court will no longer be

4

bound by its terms.  You may be sentenced all the way up to four years in state prison.  [¶]  This is commonly referred to as a *Cruz* waiver."  When the court asked defendant if he understood and agreed, he replied, "Yes, sir."  Finally, the court asked defendant's counsel if he joined the *Cruz* waiver, and he joined.

C.    *September 17, 2024, Sentencing Hearing*

At the September 17, 2024, sentencing hearing, Judge Strassner called defendant's case, noted that, although it was 9:43 a.m., he was not present, and issued a bench warrant.

During the afternoon session that same day, the trial court called the matter again and quashed the bench warrant because defendant had appeared around 11:40 a.m.  The court informed defendant's counsel that it was not prepared to sentence defendant that day because he had violated the *Cruz* waiver.

Defendant's counsel explained defendant's absence: "[Defendant] indicated to me that he was waiting for his child's mother to give him a ride to the courthouse.  He kept waiting and waiting and then she eventually ended up not being able to come pick him up, so he ended up having to take the bus here.  And that's why he was late.  He apologized to the court but he wasn't intentionally trying to be late.  He just thought he had a ride and then he took public transportation to get here."

The trial court admonished defendant for not using his cell phone to call the court and stated, "You were told three weeks ago [by Judge Yang] when you entered a plea . . . on August 26th . . . [,] that if you failed to appear at 8:30 [a.m.], that's a *Cruz* waiver violation.  If you picked up a new case, that's a *Cruz* waiver violation.  [¶]  So when you walk in here at 11:35 or 11:40

a.m., without so much as even having any communication with your attorney, or calling the court or anything of that nature, that's a *Cruz* waiver violation.  [¶]  So while I understand . . . your attorney[ ] has indicated to me you waited and waited and waited, that's not persuasive to this court."

After a further colloquy with defendant and his counsel, the trial court advised defendant that he was being remanded into custody.  At that point, there was an interruption in the proceedings.  When the court went back on the record, it explained:  "All right.  [Defendant] has exited the courtroom.  He did attempt to flee and was taken down by the Sheriff's Department when I remanded him.  [¶]  In any respect, at this point in time bail is set at no bail.  And the matter will trail within the period to October 8th, 2024, . . . for probation and sentencing.  [¶]  [Defendant is] ordered out and ordered to appear October 8th, 2024, 8:30 a.m. in this courtroom.

D.     *October 8, 2024, Sentencing Hearing*

On October 8, 2024, the trial court began the hearing by expressing concern about the original plea agreement, stating, "I couldn't understand why [the original plea] offer was being made to [defendant]," noting that Judge Yang had expressed the same concern.  The court then advised that, before the September 17, 2024, hearing, it had decided not to accept the terms of the plea agreement, detailing its reasons as follows:  "[L]egally he's not eligible for probation.  This was not an unusual circumstance case.  He has had multiple convictions . . . as an adult from 2009 through 2021, several state prison commitments where he's violated parole, violated [his post-release community supervision

6

(PRCS)], his strike offense for kidnapping was in 2013, where he served a six-year state prison commitment. And he has another state prison commitment as recently as 2021 for domestic violence. [¶] He picked up this violent felony, this robbery, . . . in 2024 before being discharged off PRCS. Those are all the factors this court considered . . . when I had determined that I would not be accepting the probationary offer in [defendant's] case."

The trial court also noted defendant's attempt to flee the courtroom on September 17, 2024, after realizing he was being remanded into custody, stating, "[T]hat certainly did not help his cause in determining whether he is a suitable candidate for probation where he is actually legally ineligible for probation." The court sentenced defendant to the low term of two years. That same day, defendant filed a notice of appeal and a request for a certificate of probable cause. The court granted the request for a certificate of probable cause the next day.

### III.   DISCUSSION

Defendant contends that, under the totality of the circumstances, his *Cruz* waiver was not knowing and intelligent. According to defendant, although he "was explicitly advised that he could potentially be sentenced to a term higher than that negotiated only if he failed to appear for court on his sentencing date," he "was not clearly advised that the judge could impose a higher sentence simply because he failed to timely appear in court."

7

A.     *Legal Principles*

"'[T]he court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea.' [Citation.] 'Generally, a trial court may exercise its discretion to withdraw approval of a plea bargain because:  (1) it believes the agreement is "unfair" [citation]; (2) new facts have come to light; (3) the court has become more fully informed about the case; or (4) when, after further consideration, the court concludes that the agreement is """not in the best interests of society"""' [citation]. But this list is not exhaustive.' [Citation.]" (*People v. Stamps* (2020) 9 Cal.5th 685, 706.)

In *Cruz, supra*, 44 Cal.3d 1247, the court explained the limitations on a trial court's power to withdraw its approval of a prior plea.  "Plea bargaining is an accepted practice in our criminal justice system.  [Citations.]  The Legislature has endorsed it in . . . section 1192.5,[footnote omitted] which provides for the entry of a plea of guilty or nolo contendere specifying both the punishment to be imposed and the exercise of other powers legally available to the sentencing court.  Upon the acceptance of such a plea by the prosecution and its approval by the court, the statute provides that the court may not impose 'a punishment more severe than that specified in the plea . . . [nor] proceed as to such plea other than as specified in the plea.'  Before the plea is entered, the court also must inform the defendant 'that (1) its approval is not binding, (2) it may . . . withdraw its approval in the light of further consideration of the matter, and (3) *in such case the defendant shall be permitted to withdraw his plea if he desires to do so* . . . .  [¶]  If such plea is not accepted by the prosecuting attorney and approved by the

8

court, the plea shall be deemed withdrawn, and the defendant may then enter such plea or pleas as would otherwise have been available.' (Italics added.)" (*Id.* at pp. 1249–1250.)

In a footnote, however, the court in *Cruz, supra,* 44 Cal.3d 1247, acknowledged that a defendant's right to withdraw a plea under section 1192.5 could be waived. "We do not mean to imply by this holding that a defendant fully advised of his or her rights under section 1192.5 may not expressly waive those rights, such that if the defendant willfully fails to appear for sentencing the trial court may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term. Any such waiver, of course, would have to be obtained at the time of the trial court's initial acceptance of the plea, and it must be knowing and intelligent." (*Id.* at p. 1254, fn. 5.)

B.    *Analysis*

Defendant's argument that his *Cruz* waiver was not knowing and voluntary is based upon his characterization of the plea hearing. According to defendant's reading of the plea form and hearing transcript, neither the form nor the trial court expressly advised him that, if he was late for the sentencing hearing, the court could deny him the promised grant of probation and instead sentence him to a prison term.

In support of his characterization of the plea hearing, defendant quotes the trial court's statement concerning the *Cruz* waiver but selectively places bold emphasis on the September 17, 2024, date for sentencing, while ignoring the clause immediately following which further informs defendant of the time of the

9

hearing.[4]  But, when the court's admonition is read in full, it advises defendant that, if he failed to appear on September 17, 2024, at 8:30 a.m., the court would "no longer be bound by the terms" of the plea agreement and defendant could be sentenced "all the way up to four years in state prison."  Moreover, defendant indicated that he understood the admonition; and the court then ordered that defendant "return September 17, 2024. 8:30 in the morning in Department A18 to be sentenced."  His waiver was therefore knowing and voluntary.[5]

To the extent defendant suggests that he did not fail to appear for his sentencing hearing but was "simply . . . late," we reject his characterization.  The trial court ordered defendant to appear for sentencing in Department A18 at 8:30 a.m. on September 17, 2024.  By failing to comply with that order, defendant failed to appear as required by law.  (See § 978.5 ["(a) A bench warrant of arrest may be issued when a defendant fails

---

[4]  For example, at page 12 of the opening brief, defendant includes the following quote from the plea hearing with bold emphasis:  "In the **event you don't show up on September 17th** to be sentenced in Department A18 at 8:30 in the morning by Judge Strassner, or you pick up a new case from now till then, what's going to happen is your plea will remain, but the court will no longer be bound by the terms.  You may be sentenced all the way up to four years in state prison."

[5]  Our discussion is limited to the only issue raised by defendant, that is, whether he was adequately advised that he would waive his right to withdraw his plea under *Cruz* if he failed to appear on the date and at the time of the sentencing hearing.  We do not address whether the trial court abused its discretion by rejecting the plea agreement on the grounds stated or by imposing the two-year term.

to appear in court as required by law, including, but not limited to, the following situations:  [¶]  (1) If the defendant is ordered by a judge or magistrate to personally appear in court at a specific time and place"].)

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

BAKER, Acting P. J.

MOOR, J.

11