Filed 4/8/26  P. v. Barroso CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRADLEY STEPHEN BARROSO,<br><br>    Defendant and Appellant. | A169802<br><br>(Contra Costa County<br>Super. Ct. No. 05002009066) |

Defendant Bradley Barroso pled no contest to a crime in exchange for an upper term sentence, the execution of which was suspended on the condition he satisfy probation.  While Barroso was on probation, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567) amended section 1170, subdivision (b) (section 1170(b)) to specify that the maximum term sentence is the middle term, unless aggravating factors are stipulated to by the defendant or proved beyond a reasonable doubt.  Despite this change in the law, after finding Barroso violated his probation, the trial court executed the upper term sentence.  We reverse.

## I.    BACKGROUND

In 2019, Barroso was charged with willfully and unlawfully using force and violence upon Anthony T., resulting in the infliction of serious bodily

injury (Penal Code, § 243, subd. (d);[1] count one) and willfully and unlawfully committing an assault on Anthony T. by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count two). Each count included a special allegation that Barroso personally inflicted great bodily injury pursuant to section 1192.7, subdivision (c)(8), and count two carried an enhancement for the personal infliction of great bodily injury (§ 12022.7, subd. (a)).

Later in 2019, Barroso agreed to a plea deal. Barroso pled no contest to count two in exchange for a stipulated upper term of four years in state prison and dismissal of the remainder of the complaint. The plea agreement also provided that the execution of the sentence would be suspended for 5 years pending his satisfactory completion of probation.[2] The trial court approved of and followed the plea agreement.

In 2021, the probation department filed a petition to revoke Barroso's probation based on his failure to report to his assigned probation officer.

In 2022, Senate Bill No. 567 became effective. Senate Bill No. 567 amended section 1170 to limit the trial court's ability to impose the upper term by making the middle term the presumptive prison term unless specified circumstances exist. (§ 1170(b)(1)–(2); Stats. 2021, ch. 731, § 1.3.) To wit, in relevant part section 1170(b) states: "(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).

---

[1] Further statutory references are to the Penal Code unless otherwise specified.

[2] One condition of the plea agreement was that Barroso serve 210 days in county jail.

[¶] (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.  (§ 1170(b)(1)–(2).)

In 2024, after a contested hearing, the court found Barroso in violation of probation.  The court then terminated Barroso's probation and executed the four-year, upper term sentence.  Barroso appealed.

## II.    DISCUSSION

The only question before us is an issue currently pending before the California Supreme Court:  whether a defendant whose sentence was imposed pursuant to a stipulated plea agreement may seek relief under Senate Bill No. 567.  (*People v. Mitchell* (2022) 83 Cal.App.5th 1051 (*Mitchell*), review granted Dec. 14, 2022, S277314.)  This is an issue that has split the Courts of Appeal, including divisions within this court.  (Compare *Mitchell*, at pp. 1057–1059 [defendant not entitled to remand]; *People v. Sallee* (2023) 88 Cal.App.5th 330, 334 (*Sallee*), review granted Apr. 26, 2023, S278690 [same] with *People v. Todd* (2023) 88 Cal.App.5th 373, 376 (*Todd*), review granted Apr. 26, 2023, S279154 [defendant entitled to remand]; *People v. Fox* (2023) 90 Cal.App.5th 826, 830 (*Fox*) [same]; and *People v. De La Rosa Burgara* (2023) 97 Cal.App.5th 1054, 1056 (*De La Rosa Burgara*), review granted Feb. 21, 2024, S283452 [same].)  We independently review issues of statutory construction.  (*Fox*, at p. 831.)

While conceding that Senate Bill 567's amendments to section 1170(b) apply retroactively to nonfinal cases, the Attorney General urges this court to follow *Mitchell* and conclude that Barroso is not entitled to any relief under

3

Senate Bill 567 because he entered into a negotiated plea agreement that expressly called for the imposition of the upper term. Barroso maintains this court should follow *Fox* instead. We choose the latter path.

A.     **The Split Between the Courts of Appeal**

Our colleagues in Division Five were the first to address the issue in *Mitchell*, *supra*, 83 Cal.App.5th 1051. *Mitchell* relied on this court's analysis in *People v. Brooks* (2020) 58 Cal.App.5th 1099, 1106 (*Brooks*), superseded by statute as stated in *People v. Harrell* (2023) 95 Cal.App.5th 161, 166, which dealt with "whether the resentencing authority granted by section 1170.91, subdivision (b) . . . extends to sentences based on final convictions by plea agreement specifying a stipulated imprisonment term." Former section 1170.91 mandated that the trial court consider trauma resulting from military service as a mitigating factor when a court exercises determinate sentencing triad discretion under former section 1170(b). (Stats. 2014, ch. 163, § 2; *Brooks*, at p. 1103.) The Legislature then added a retroactivity clause to allow military members and veterans currently serving a prison sentence for a felony conviction, "whether by trial or plea," to petition for a recall of his or her sentence (provided he or she alleged certain requirements) and to be resentenced (provided those requirements were met) with military service-caused trauma considered as a mitigating factor. (§ 1170.91, subd. (b); Stats. 2018, ch. 523, § 1; see *Brooks*, at pp. 1103–1104.) Despite section 1170.91, subdivision (b)'s express language specifying that it applied to convictions by "plea," *Brooks* held that the retroactive relief was unavailable to defendants whose sentences were imposed pursuant to a *stipulated* plea agreement because the court had not exercised any triad sentencing discretion. (*Brooks*, at p. 1106; see *Mitchell*, *supra*, 83 Cal.App.5th at pp. 1057–1058.)

4

*Mitchell* applied the same logic to section 1170(b).  *Mitchell* observed: "amended section 1170, subdivision (b)(1) states that where an offense provides for a sentencing triad, the trial court 'shall, in its *sound discretion*, order imposition of a sentence not to exceed the middle term except as otherwise provided in paragraph (2).' (Italics added.)  This language indicates that the statute was not intended to apply to sentences imposed pursuant to a stipulated plea agreement, as the trial court lacks discretion to select the sentence in the first place." (*Mitchell*, *supra*, 83 Cal.App.5th at p. 1058.)

In *Sallee*, *supra*, 88 Cal.App.5th at page 338, the Fifth District also concluded that "the trial court did not exercise discretion with regard to the sentencing triad when it imposed the stipulated sentence set out in the negotiated plea agreement, and thus the amendments to section 1170 brought about by Senate Bill No. 567 are inapplicable under the plain language of the statute."  *Sallee* "further note[d] that a contrary holding would create absurd consequences that do not further or promote the general purpose of the statute." (*Id.* at p. 340.)  The court explained that applying section 1170(b) to negotiated pleas would permit a defendant "to enter a plea and agree to a stipulated upper-term sentence, while nonetheless asserting a statutory right under section 1170, subdivision (b)(2), to a jury trial on aggravating factors supporting the agreed-upon upper term," thereby eliminating the contractual obligations of plea agreements. (*Sallee*, at p. 340.)

Subsequent to *Mitchell* and *Sallee*, however, courts have gone the other way when interpreting Senate Bill No. 567, starting with the Sixth District in *Todd*, *supra*, 88 Cal.App.5th 373.[3]  *Todd* distinguished section 1170.91 (the

---

[3] *Todd* was published on the same day as *Sallee*.

5

statute at issue in *Brooks*) from Senate Bill No. 567, which "does not merely add additional factors to be considered among many in the trial court's sentencing determination. It prohibits the imposition of the upper-term sentence absent specific findings." (*Todd*, at p. 378.) Thus, while the plea bargain in *Brooks* resulted in a sentence that still fell "within the boundaries of the Penal Code's sentencing structure," the sentence at issue in *Todd* exceeded the trial court's authority because the statutorily required findings for imposing an aggravated term under section 1170(b) had not been met or waived. (*Todd*, at p. 379.)

*Todd* also reasoned that " 'as a general rule, plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. That the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them.' (§ 1016.8, subd. (a)(1).) Therefore, '[a] plea bargain that requires a defendant to generally waive unknown future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may occur after the date of the plea is not knowing and intelligent.' (§ 1016.8, subd. (a)(4).)" (*Todd, supra*, 88 Cal.App.5th at p. 379.) The court noted that "the Legislature declined to limit the retroactive effect of [Senate Bill No. 567], which indicates its intent that the parties be bound by its amendment to the sentencing provision and honor section 1016.8." (*Todd*, at p. 380.)

Further, *Todd* relied on *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*). (*Todd, supra*, 88 Cal.App.5th at p. 380.) The *Stamps* defendant agreed to a plea bargain that included a mandatory five-year enhancement for a prior conviction of a serious felony. (*Todd*, at p. 380; *Stamps*, at p. 692.)

6

At the time the *Stamps* defendant negotiated his plea " 'a fundamental assumption underlying the plea bargain' [citation] was that the sentencing court could not strike such an enhancement. While that case was on appeal, the Legislature enacted Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393) (Stats. 2018, ch. 1013), which 'removed provisions that prohibited a trial court from striking a serious felony enhancement in furtherance of justice under section 1385.' " (*People v. Prudholme* (2023) 14 Cal.5th 961, 971 (*Prudholme*).) *Stamps* rejected the defendant's argument that Senate Bill 1393 called for a remand for the trial court to consider striking his serious felony enhancement while maintaining the remainder of his bargain. (*Ibid.*; *Stamps*, *supra*, 9 Cal.5th at pp. 700–701.) But "*Stamps* concluded that a limited remand was appropriate to allow the defendant 'the opportunity to seek the court's exercise of its section 1385 discretion.' " (*Prudholme*, at p. 972, quoting *Stamps*, at p. 707.) Under this procedure, the prosecution could withdraw from the plea agreement if the trial court granted the defendant's request and withdrew its approval of the agreement. (*Ibid.*) *Todd* held the defendant was entitled to remand for resentencing in compliance with amended section 1170(b) in the same way. (*Todd*, at pp. 380–382.)

In *Fox*, *supra*, 90 Cal.App.5th 826, Division One of this court came to same conclusion as *Todd* principally by relying on *Stamps*. *Fox* concluded that *Stamps* refuted *Mitchell* and *Sallee*'s reading of section 1170(b)(1)'s purported plain language. (*Fox*, *supra*, 90 Cal.App.5th at p. 833.) As *Fox* explained: "*Mitchell* concluded that since 'amended section 1170[(b)(1)] states that . . . the trial court "shall, in its *sound discretion*, order imposition of a sentence not to exceed the middle term except as otherwise provided in paragraph (2)," ' the amended law 'was not intended to apply to sentences

7

imposed pursuant to a stipulated plea agreement, as the trial court lacks discretion to select the sentence in the first place.' " (*Fox*, at p. 833, quoting *Mitchell*, *supra*, 83 Cal.App.5th at p. 1058.) "But section 1170(b)—like section 1385 (the statute at issue in *Stamps*)—involves a trial court's 'exercising [of] its discretion' to make a sentencing choice." (*Fox*, at p. 834.) Under *Stamps*, the new discretion granted by section 1385, " 'whether considered a new circumstance in the case or simply a reevaluation of the propriety of the bargain itself, would fall within the court's broad discretion to withdraw its prior approval of the plea agreement.' " (*Fox*, at p. 834.) *Fox* extended that reasoning to "[t]he amendment of section 1170(b)" because it was "a significant legal change that could well affect a court's evaluation of a plea bargain's fairness." (*Fox*, at p. 834.) Indeed, *Fox* viewed remand as *more* appropriate in the present context than it was in *Stamps*, because regardless of whether the trial court exercised its discretion in *Stamps* the resulting sentence would be legal, whereas "under Senate Bill No. 567 an upper-term sentence is not even authorized unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt." (*Fox*, at p. 834; see also *De La Rosa Burgara*, *supra*, 97 Cal.App.5th at p. 1063 ["We agree with the analysis in *Todd* and *Fox*"].)

*Fox* further disputed *Sallee*'s conclusion that applying section 1170(b) to negotiated pleas would create " 'absurd consequences.' " (*Fox, supra*, 90 Cal.App.5th at p. 834.) While *Sallee* was concerned that defendants could agree to an upper term sentence as part of a plea bargain yet also assert a statutory right to a jury trial on the aggravating circumstances supporting the upper term, *Fox* explained that a defendant who pled to a stipulated sentence could also stipulate to the aggravating circumstances, obviating the need for trial. (*Fox*, at p. 834.) Thus, extending retroactive relief to

8

defendants would not pose an unworkable obstacle to reaching plea bargains. (*Ibid.*)

**B.    Section 1170(b) Relief is Available to Barroso**

As ever in statutory interpretation, " '[w]e begin with the text of the relevant provisions.  If the text is unambiguous and provides a clear answer, we need go no further.  [Citation.]  If the language supports multiple readings, we may consult extrinsic sources, including but not limited to the legislative history and administrative interpretations of the language.' " (*Mitchell*, *supra*, 83 Cal.App.5th at p. 1057.)

Unlike *Mitchell* and *Sallee* we do not find the statutory text unambiguous.  *Mitchell* and *Sallee* emphasized section 1170(b)'s reference to "sound discretion" as evidence that the statute was not intended to apply where the court imposed a stipulated sentence set out in the negotiated plea agreement because the court exercised no discretion.  (*Mitchell*, *supra*, 83 Cal.App.5th at p. 1058; *Sallee*, *supra*, 88 Cal.App.5th at p. 338.)  However, their interpretation glosses over the " 'inherent sentencing discretion' " invested in the court to accept and impose a plea bargain.  (*Prudholme*, *supra*, 14 Cal.5th at p. 973.)

While a trial court cannot unilaterally modify the terms of a plea agreement (*Mitchell, supra*, 83 Cal.App.5th at p. 1058; but cf. § 1016.8, subd. (a) ["That the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them"]), the Supreme Court explained:  " 'Some potential for confusion appears in broad statements to the effect that once a trial court has "accepted" a plea bargain, it too is "bound" by it.  [Citations.]  . . . Taken out of context, they might suggest that the court surrenders its sentencing discretion the moment it accepts a negotiated plea.  Such a view is of course

9

irreconcilable with the statute and cases . . . . The statements . . . are best understood as only prohibiting the court from unilaterally modifying the terms of the bargain *without affording . . . an opportunity to the aggrieved party to rescind the plea agreement and resume proceedings where they left off.'* " (*Stamps, supra*, 9 Cal.5th at p. 701, italics added.) Thus, "the relevant question here is not whether the sentencing judge is bound by the parties' stipulated sentence, but whether [Barroso] is entitled to the ameliorative effect of Senate Bill No. 567's new sentencing provisions." (*Todd, supra*, 88 Cal.App.5th at p. 380.)

We agree with *Todd* and *Fox* that Senate Bill No. 567's amendment to the section 1170(b) is analogous to the statutory amendment at issue in *Stamps* and therefore warrants a remand. (*Todd, supra*, 88 Cal.App.5th at p. 380; *Fox, supra*, 90 Cal.App.5th at p. 834.) *Brooks* is instructive. The majority opinion in *Brooks* distinguished section 1170.91 from the statute at issue in *Stamps*,[4] explaining: "section 1170.91 does not eliminate the legal basis for [the defendant's] conviction or grant the trial court unfettered discretion to reconsider an aspect of his sentence that would in turn affect his plea bargain. All it does is allow a court to take certain mitigating factors into account, and only insofar as the court is otherwise permitted to exercise discretion in the selection of a low, middle, or high term from within the applicable sentencing triad." (*Brooks, supra*, 58 Cal.App.5th at p. 1107.) Conversely, Senate Bill No. 567 "prohibits the imposition of the upper-term

---

[4] The majority also distinguished *Harris v. Superior Court* (2016) 1 Cal.5th 984, 989, where the Supreme Court held that, "despite the defendant's conviction having come from a plea agreement specifying a stipulated term, the defendant was still entitled to the benefit of Proposition 47 reclassifying his conviction from a felony to a misdemeanor." (*Brooks, supra*, 58 Cal.App.5th at pp. 1105, 1107.)

sentence absent specific findings." (*Todd*, *supra*, 88 Cal.App.5th at p. 378.) Thus, in the instant case, the imposition of the upper term pursuant to a plea deal, in which Barroso did not waive or stipulate the statutory prerequisites had been met, exceeded the court's authority.

Our conclusion accords with the statute's purpose as codified by the Legislature in section 1170, subdivision (a):  "The Legislature finds and declares that the purpose of sentencing is public safety and to reduce recidivism achieved through punishment, rehabilitation, and restorative justice.  When a sentence includes incarceration, the deprivation of liberty satisfies the punishment purpose of sentencing.  Therefore, the carceral system should not . . . aggravate the suffering inherent while experiencing imprisonment.  The essential purpose of incarceration is rehabilitation and successful community reintegration . . . .  This purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of people incarcerated for committing the same offense under similar circumstances."  Applying section 1170(b) to nonfinal sentences plea agreements furthers the goals of uniformity and proportionality.

Accordingly, we conclude that Barroso is entitled to relief via a limited remand akin to that employed in *Stamps*.  On remand Barroso may " 'waive or invoke the requirements of section 1170[(b)].' [Citation.]  If [Barroso] does not waive those requirements, the trial court must determine whether the upper term can be imposed in compliance with section 1170(b).  If it can be so imposed, then the sentence will stand.  But if it cannot, and the prosecution does not acquiesce to a reduced sentence or the trial court no longer approves of the plea agreement with the reduction, the court must 'return the parties to the status quo.' " (*Fox, supra*, 90 Cal.App.5th at p. 835, quoting *Todd,*

11

*supra*, 88 Cal.App.5th at pp. 381–382; see also *De La Rosa Burgara*, *supra*, 97 Cal.App.5th at pp. 1063–1064.)

## III.   DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings at which Barroso may waive or invoke the requirements of section 1170(b).

_____
Moorman, J.*

WE CONCUR:


_____
Streeter, Acting P. J.


_____
Goldman, J.


*People v. Barroso*/A169802

_____

\* Judge of the Superior Court of California, County of Mendocino, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.