Filed 5/22/26  P. v. Wright CA1/3
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>VINCENT RASHAD LAMAR WRIGHT,<br><br>　　　Defendant and Appellant. | A173343<br><br>(San Mateo County<br>Super. Ct. No. 21-SF-004342-A) |

Vincent Rashad Lamar Wright pled no contest to driving under the influence of a drug causing injury (Veh. Code, § 23153, subd. (f)) and admitted a great bodily injury (GBI) enhancement and a prior strike pursuant to a plea agreement with a maximum seven-year prison sentence. The court announced it was imposing a seven-year total sentence.  In so doing, the court referred to the base term as the "low term" of two years, when two years was the *middle* term.

On appeal, Wright asserts the trial court erred by denying his motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to dismiss the prior strike.  We disagree and conclude the court did not abuse its discretion in denying the *Romero* motion.

Wright further contends the court erred when pronouncing the "low" term sentence as two years.  As it is unclear whether the court intended to

1

impose as the base term the low term of 16 months or the middle term of two years, we remand for the court to clarify its intended sentence, as well as to correct a clerical error in the abstract of judgment.  In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2020 in Redwood City, Wright was driving a commercial truck that belonged to his employer.  He was driving in the wrong direction and at a high rate of speed when he collided head-on with a vehicle driven by Karen S.[1]  Karen sustained numerous injuries and was transported to the hospital.

Wright admitted to responding police officers that he had taken methamphetamine just hours before the collision, and he later tested positive for methamphetamine.

*Charges and No Contest Plea*

In 2021, Wright was charged by felony information with one count of driving under the influence of a drug causing injury (Veh. Code, § 23153, subd. (f); count 1), one count of driving and taking a vehicle without consent (*id.*, § 10851, subd. (a); count 2), and one count of reckless driving causing injury (*id.*, § 23105, subd. (a); count 3).  The information alleged as to count 1 that Wright personally inflicted GBI on Karen (Pen. Code, § 12022.7, subd. (a); statutory references are to this code unless otherwise indicated), had two or more prior serious and/or violent felony strike convictions (§ 667, subd. (a)(1)), had three prior convictions (§ 1203, subd. (e)(4)), and that count 1 was itself a serious and/or violent felony.

---

[1] To protect personal privacy interests, we refer to the victim in this case by first name and last initial, and thereafter by first name only.  No disrespect is intended.  (Cal. Rules of Court, rule 8.90(b)(4).)

2

On November 8, 2024, pursuant to a negotiated plea agreement, Wright pled no contest to count 1 (driving under the influence of a drug causing injury), admitted the GBI enhancement, and admitted one prior serious felony strike conviction. In exchange, the plea agreement provided for the dismissal of the other two counts, a stay of the five-year enhancement under section 667, subdivision (a)(1) for the prior serious felony conviction, and a total sentence of up to seven years in prison. The plea agreement also provided the court would consider a *Romero* motion—but the court "ma[d]e no promises" as to how it would rule on the motion.

*Sentencing Hearing*

At the March 24, 2025 sentencing hearing, Karen read a detailed victim impact statement to the court. Karen described her terrifying experience of seeing Wright barreling toward her head-on in a large commercial truck and violently crashing into her, as well as facing "the most terrible moments" of her life when she came to after the crash and was trapped in her car with broken bones. Karen detailed the resulting permanent and life-changing injuries throughout her body, the numerous surgeries and recoveries she underwent and would continue to require, as well as the chronic pain, limited mobility, traumatic brain injury, and post-traumatic stress disorder she expected to experience for the rest of her life. The crash also negatively affected her family in multiple ways and caused significant financial difficulties.

The court considered Wright's actions, his history, and what he had done since the incident when deciding the sentence and whether to grant the *Romero* motion to dismiss his prior strike. The court pronounced the sentence as follows: "[P]robation is denied based on those factors. It's the low term, two years, in the Department of Corrections and Rehabilitation. I am

3

denying the *Romero*.  That sentence is doubled to a total of four years . . . . [¶]
I'm adding three years for the [section] 12022.7 [GBI enhancement], for a
total of seven years commitment . . . ."

The abstract of judgment reflects the court's oral pronouncement,
indicating the total term is seven years,[2] comprised of a base term of two
years—which it refers to as the low term—doubled to four years (§ 667,
subd. (e)(1)), plus three years for the GBI enhancement (§ 12022.7, subd. (a)),
with the five-year enhancement for the prior serious felony conviction (§ 667,
subd. (a)) stayed.

Wright filed a notice of appeal, checking the box on the Judicial Council
form stating: "This appeal is based on the sentence or other matters occurring
after the plea that do not affect the validity of the plea."  No certificate of
probable cause was requested or issued in this case.

## DISCUSSION

Wright argues the trial court abused its discretion by denying his
*Romero* motion and erred when imposing the sentence of "the low term, two
years" as the low term for the offense is 16 months.  The Attorney General
contends Wright cannot raise those issues on appeal because he did not
obtain a certificate of probable cause and that they fail on the merits.

For the reasons we explain, we conclude a certificate of probable cause
is not required and the trial court did not err in denying the *Romero* motion.
However, as the record is unclear as to what base term the court intended to
impose, we remand for clarification of the sentence.

---

[2] The abstract of judgment mistakenly refers to the total term as an
indeterminate term of "7 YTL"; the court did not impose an indeterminate
term, and the maximum term permitted by the agreement was a determinate
term of seven years.  We address this clerical error in part III, *post*.

4

## I. No Certificate of Probable Cause Is Required

Section 1237.5 provides a defendant may not appeal from a guilty or no contest plea without a certificate of probable cause for an appeal based on reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. Even without a certificate of probable cause, a defendant may nonetheless appeal issues related to post-plea matters, such as the sentence, that do not challenge the plea's validity. (*People v. Stamps* (2020) 9 Cal.5th 685, 694; see Cal. Rules of Court, rule 8.304(b)(2)(B).)

However, " '[e]ven when a defendant purports to challenge only the sentence imposed, a certificate . . . is required if the challenge goes to an aspect of the sentence to which the defendant agreed as an integral part of a plea agreement,' " as such a claim is, " 'in substance[,] a challenge to the validity of the plea.' " (*People v. Stamps*, *supra*, 9 Cal.5th at p. 694, italics omitted.) Thus, where a defendant enters a negotiated plea in which the parties agree the court will impose a specific, agreed-upon sentence, any challenge to that sentence is a challenge to the validity of the plea and requires a certificate of probable cause. (*People v. Hurlic* (2018) 25 Cal.App.5th 50, 55; accord, *People v. Panizzon* (1996) 13 Cal.4th 68, 79.)

By contrast, "a certificate of probable cause is not required to challenge the exercise of individualized sentencing discretion within an agreed maximum sentence," absent contrary provisions in the plea agreement (*People v. Buttram* (2003) 30 Cal.4th 773, 790), as long as the defendant is not challenging the trial court's *authority* to impose a sentence within a negotiated "lid" or maximum (*People v. Shelton* (2006) 37 Cal.4th 759, 763).

In this case, no certificate of probable cause is required because the issues Wright seeks to raise concern the court's denial of his *Romero* motion and the court's choice "from among a range of permissible sentences within

5

the maximum" of seven years that was agreed upon, both of which are challenges to the court's post-plea exercise of its sentencing discretion reserved under the plea agreement.  (*People v. Buttram*, *supra*, 30 Cal.4th at pp. 790–791, 777, 786–787; *People v. Cole* (2001) 88 Cal.App.4th 850, 872 [no certificate of probable cause needed to challenge failure to strike prior strike].)  We therefore turn to the merits of each claim.

## II. Denial of *Romero* Motion Was Not Abuse of Discretion

We review the court's refusal to dismiss a prior strike under the deferential abuse of discretion standard.  (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)  Under that standard, a defendant must show the trial court's decision was "so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at pp. 376–377.)  We find no such abuse of discretion here.

The "three strikes" law is intended "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious or violent felony offenses."  (§ 667, subd. (b).)  Although a trial court may dismiss a prior felony strike when dismissal is "in furtherance of justice," its discretion to do so is limited.  (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529–530.)

The standard for dismissing a prior strike under section 1385 is "stringent" and the circumstances must be " 'extraordinary . . .  by which a career criminal can be deemed to fall outside the spirit of' " the law.  (*Carmony*, *supra*, 33 Cal.4th at pp. 377–378.)  This is because the three strikes law "establishes a sentencing norm" and "carefully circumscribes the trial court's power to depart from this norm."  (*Id.* at p. 378.)  A court must explicitly justify any decision to depart from the norm, thereby creating "a

strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid.*)

When determining whether to dismiss a prior strike, the court must consider the constitutional rights of the defendant, including guarantees against disproportionate punishment, as well as the interests of society, which include the fair prosecution of properly charged crimes. (*People v. Williams* (1998) 17 Cal.4th 148, 160 (*Williams*).) The court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

## A. Additional Relevant Facts

At sentencing, Wright's counsel asked the court to suspend any sentence imposed to allow Wright to continue with a residential addiction treatment program he had begun 60 days earlier. Counsel acknowledged Wright's getting treatment was "late in coming" but argued he was committed to completing the residential program in six months and then spending two years in a sober living environment. Counsel asserted Wright had gained insight into the damage he had caused and that it would be easier to monitor Wright's progress and keep him accountable outside of prison.

The prosecution requested the court impose the seven-year maximum sentence under the plea agreement. The prosecution cited Wright's criminal history, his use of alcohol and marijuana as recently as 2024, his failure to attend rehabilitation until just before sentencing, and the impact on Karen.

It further argued any mitigation had been accounted for by the agreement to stay the five-year section 667, subdivision (a) enhancement.

The court considered numerous factors related to the offense and Wright's history when deciding to deny the *Romero* motion. The court highlighted the seriousness of the offense conduct, which resulted in the "worst-case scenario . . . but for [Karen] dying" as her life would never be the same and she was going to be in pain for the rest of her life. Meanwhile, Wright was going to be able to walk normally and be pain-free. Though Wright was aware he had "ruined" Karen's life and the court believed he was sorry, that was not enough.

Wright's prior history showed a pattern of reckless and violent behavior that he minimized. For example, Wright took part in a violent robbery in 2005 during which the victim was brought to the ground, punched, and kicked while Wright covered her mouth as she was screaming for help and stole money from her. Wright claimed he did not do anything and was merely there for the robbery after hanging out with friends and drinking. Two years later, Wright committed grand theft and was sentenced to three years in prison. He was paroled on that offense and then was convicted of robbery, for which he received a 13-year prison sentence. Also, Wright was on parole when he committed the offense conduct in this case.

Regarding Wright's conduct since the incident, Wright had the opportunity to show how much he had realized and done "to truly be sorry" for his actions because he spent only one day in custody and had otherwise been out of custody since 2020, but in all that time he "did absolutely nothing." Though he had entered a residential treatment program recently, he waited until he was "facing down the barrel of seven years" in prison to start the program despite having had almost five years to do so. The court

8

could not say the timing was not suspicious and did not know if it was for the right reasons.

The court was "willing to take a look at [Wright's] history and what [he had] done" but found it disappointing, particularly because Wright lacked accountability for his actions. The court then denied the *Romero* motion.[3]

**B. Analysis**

The trial court acted within its discretion when denying the *Romero* motion. The court described why dismissal of the prior strike was not warranted after detailing numerous proper considerations relevant to whether Wright may be deemed outside the spirit of the three strikes law. (See *Williams*, *supra*, 17 Cal.4th at p. 161.)

Specifically, the court explained that the nature of the present felony involved ruining the life of a blameless person, who would have to endure lifelong complications because of Wright's actions. The court also described Wright's violent criminal history, including the nature of the robbery in which he covered the victim's mouth while she cried out, his subsequent grand theft and robbery violations, and his repeated commission of offenses while on parole. The court found Wright downplayed his history and failed to take accountability for his past conduct. After considering these circumstances, the court was well within its discretion to conclude Wright did

---

[3] The Attorney General contends Wright forfeited his challenge to the denial of the *Romero* motion by failing to object after the court denied it. We are not convinced that, even after expressly reserving the right to seek dismissal of his prior strike under the negotiated plea agreement, and after the court laid out its reasons for declining to do so, Wright was required to expressly object to preserve the issue for appeal. (Cf. *Carmony*, *supra*, 33 Cal.4th at pp. 375–376 [failure to seek dismissal of prior strike before trial court forfeits right to raise the issue on appeal].)

9

not meet the "stringent" standard for dismissing the prior strike. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

Wright nonetheless asserts the court abused its discretion by failing to consider that: the instant offense was precipitated by his untreated addiction and depression; Karen took no position on a sentence; he experienced significant hardship growing up; his prior offenses did not show he was a " 'revolving door' criminal" and did not involve weapons, sexual misconduct, serious assault, or repeated domestic violence; all of his prior offense conduct occurred over 15 years before sentencing, when he was between the ages of 18 and 21; and he had made progress since his youth, including accepting responsibility for the instant offense and entering rehabilitation.

Nothing in the record demonstrates the court improperly failed to account for the mitigating circumstances in this case. It was not improper for the court to conclude that, when weighed against the other factors already discussed, these mitigating factors did not rise to the " 'extraordinary' " level under which Wright could be deemed to fall outside the spirit of the law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Wright further argues the court erroneously considered his delay in entering rehabilitation and speculated as to his motivations for doing so to justify disregarding his participation in treatment. We find no abuse of discretion in the court's references to Wright's recent engagement with rehabilitation, which it discussed in the context of analyzing whether Wright had taken advantage of the many years he had been out of custody since the offense conduct to demonstrate remorse for his actions and his ability to rehabilitate successfully. (See *Williams*, *supra*, 17 Cal.4th at p. 161 [court must consider circumstances of present offense and particulars of defendant's prospects in deciding *Romero* motion].)

Finally, we are unpersuaded by Wright's assertion that the court "improperly relied on the irrelevant factor of its own decision to deny probation" when denying the *Romero* motion. Wright relies on the court's statement that it considered various factors when deciding "whether or not to strike your strike and give you a sentence that you want which is a residential treatment program" to argue the court failed to recognize it could grant the *Romero* motion and still deny his requested sentence. The record does not show the court failed to recognize its discretion to do so, but rather that it found neither dismissal of the prior strike nor a grant of probation was warranted here.

In sum, the court did not abuse its discretion in denying the *Romero* motion.

## III. Remand for Clarification of Sentence Imposed Is Warranted

Wright contends the court's pronouncement of sentence was erroneous because the court stated it was imposing "the low term, two years," which is also reflected in the abstract of judgment, but the low term for his offense is 16 months. He avers we should correct the judgment to reflect the low base term of 16 months or remand for the court to clarify its intended sentence.

The applicable sentencing triad for a first offense of driving under the influence of a drug causing injury is 16 months for the low term, two years for the middle term, and three years for the upper term. (See § 1170, subd. (h)(1) [standard triad is 16 months, two years, or three years]; Veh. Code, § 23554 [first offense punishable by standard triad]; see also Veh. Code, § 23153 [stating no otherwise applicable triad].)

We are not persuaded by the Attorney General's argument that the court "made abundantly clear that it intended to impose the maximum sentence permissible" of seven years. Although the court stated it was

11

imposing a seven-year sentence, it is also possible such a sentence was premised on a misinterpretation of the applicable low term. And, contrary to the Attorney General's contention, we are not convinced that the court merely "mislabeled" the base term as the low term or that it was only a "misnomer." Rather, the sentencing transcript and the abstract of judgment both contain contradictory references to both the low term and two years; both cannot be true at the same time.

While the Attorney General contends this issue is forfeited, we decline to find forfeiture where it is not clear what sentence the court intended to impose. In the interests of justice, we remand solely for the court to specify its intended sentence. On remand, the trial court is instructed to modify the abstract of judgment to reflect the sentence it intended to impose at sentencing and refer to *either* the low base term of 16 months, *or* the middle base term of two years. If the court intended to impose the low term of 16 months, it must modify the total sentence imposed accordingly. Finally, in either case, the court must modify the abstract of judgment to remove the clerical error referring to "YTL" under the "TOTAL TIME" as we agree with the parties that the court did not, and could not, impose an indeterminate term of seven years to life under the terms of the plea agreement.

However, we stress that, if the court indeed intended to impose the seven-year total sentence based on the middle term of two years, doing so was not an abuse of the court's discretion considering the relevant sentencing factors considered by the court and discussed in part II, *ante*. (See *People v. Sarmiento-Zuniga* (2025) 108 Cal.App.5th 1216, 1226 [trial court does not abuse its discretion by imposing the presumptive middle term rather than the low term where the court sets forth on the record the facts and reasons for choosing the sentence imposed at time of sentencing, and that decision

12

does not fall outside the bounds of reason under applicable law and relevant facts].)[4] A sentence based on the low term of 16 months would also not be an abuse of the court's sentencing discretion.

## DISPOSITION

We affirm the trial court's denial of the *Romero* motion. We remand for the court to clarify whether it intended to impose the low term of 16 months or the middle term of two years, and to modify the abstract of judgment accordingly, as well as to remove any reference to "YTL." In all other respects, the judgment is affirmed.

---

[4] To the extent Wright argues the court "impliedly found" the presumption for a low term applied in this case under section 1170, subdivision (b)(6), we disagree given the ambiguity surrounding the court's imposition of sentence. Further, any argument that the court erred by failing to *expressly* address the applicability of that statute is forfeited by Wright's failure to raise it in his briefs or to request remand on that basis. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 [issues not supported by reasoned legal argument and citation to authority may be treated as forfeited]; *People v. Nielsen* (2026) 119 Cal.App.5th 816, 828 [declining to find that "a trial court's failure to make express findings under section 1170[, subdivision ](b)(6) requires remand regardless of whether the record affirmatively demonstrates that the trial court misunderstood the scope of its sentencing discretion" under that statute where appellant "has not squarely asked" the appellate court to do so].)

13

PETROU, J.

WE CONCUR:

TUCHER, P. J.

FUJISAKI, J.

A173343 / *People v. Wright*

14